IN RE ESTATE OF EVERETT F. SMITH.
MELITA SMITH v. ESLEY E. SMITH.[1]

April 15, 1954.

No. 36,251.

*Seifert, Johnson & Hand,* for appellant.
*Baudler & Baudler,* for respondent.

KNUTSON, JUSTICE.

Appeal from an order denying plaintiff's motion for amended findings of fact and conclusions of law or for a new trial.

[1]Reported in 64 N. W. (2d) 129.

Everett F. Smith was born in Faribault county, where he lived the greater portion of his life on a farm which his father had owned before him. After the death of his father, Everett continued to live on the farm and operated it for his mother during her lifetime. When she died, Everett acquired the share owned by his sister, Mary Doolittle, and thereafter continued to own and reside on the farm.

Everett was first married to one Lulu Stoufer. To this union were born two children, Esley and Laura. Lulu obtained a divorce from Everett, and he then married Melita, plaintiff herein. Two children were also born to this marriage, Gloria Ann and Diana Kay.

For some time prior to his death Everett Smith was not well. He suffered from diabetes from 1938; from hardening of the arteries and heart trouble from 1949; and during the year 1949 he suffered a stroke. He was in various hospitals from time to time on account of one or the other of these ailments. In 1951 he went to the Veterans Hospital in Minneapolis, where he remained for two or three weeks. He was again taken to the Veterans Hospital by ambulance around Christmas in 1951. He remained until February 19, 1952, at which time he returned to his farm in Faribault county. On March 17, 1952, he was again taken to the Veterans Hospital by ambulance. He remained until May 5, when he again returned to his farm home. On this occasion he had his right leg amputated at the mid thigh because of diabetic gangrene. On May 14, he was again returned to the Veterans Hospital. On June 4, the hospital sent Everett's wife a telegram reading, "Regret to inform your husband Everett Smith seriously ill this hospital." Upon receipt of this telegram, plaintiff went to the hospital. She testified that her husband did not know her.

On June 10, 1952, Esley Smith, the son, went to the hospital to see his father. Against medical advice of the hospital staff, Esley removed his father from the hospital to St. Olaf Hospital in Austin, Minnesota. On the way to Austin they stopped at Winnebago, where they saw the banker with whom Everett had done business. Everett made out a check and directed the banker to send his money to Grand Meadow. Some time thereafter he opened a bank account at Grand Meadow. At the time he was admitted to St. Olaf Hospital

he gave as his address Winnebago, Minnesota. The record shows that Esley Smith gave as his reason for removing his father from the Veterans Hospital—

"* * * to get away from his second wife. Son says she abuses the man and has tried to have him declared insane. Says she is after his farm and money."

On June 13, 1952, while in St. Olaf Hospital, Everett Smith began a divorce action against his wife. The venue of the action was Mower county. In the complaint he alleged that he resided in Mower county. In his prayer for relief he asked for the custody of his two minor children. His wife interposed an answer. She did not question the propriety of the venue of the action. The action was still pending when Everett died on November 9, 1952. It was dismissed thereafter.

On June 27, 1952, Everett, who was then in a wheel chair, was taken to Esley's farm home near Grand Meadow, which is in Mower county. On August 13, Melita Smith, a son by a former marriage, and the two minor daughters of Everett and Melita drove to the farm of Esley. Esley testified that his father did not want to see them. At any rate, they did not see him.

On August 16, Esley returned his father to St. Olaf Hospital. The hospital record shows his address as Grand Meadow. He remained there until September 1, when he was taken to the Jacobs Rest Home in Austin. He was again returned to St. Olaf Hospital on September 19 because of gangrene in his left great toe. The record again stated that his address was Grand Meadow. On September 26 his left leg was amputated. He remained in the hospital until his death on November 9. He was buried from the Methodist Church in Winnebago.

On the same day that he went to Esley's home, Everett Smith signed a last will and testament in which he stated that he was a resident of Mower county. He named Esley as executor and Esley and his daughter Diana Kay as sole beneficiaries under his will. He stated that he had purposely omitted his wife and his daughters Laura and Gloria Ann.

On November 12, 1952, Esley filed a petition with the probate court of Mower county to have himself appointed special administrator of his father's estate. On the same day he filed a petition for the admission of his father's last will and testament to probate. At the hearing on December 9, 1952, Mrs. Smith appeared and objected to the venue in Mower county and moved the court to transfer all proceedings to Faribault county, claiming that that was the residence of Everett Smith at the time of his death. The motion was denied by the probate court. An appeal was taken to the district court, and that court determined that Everett was a resident of Mower county at the time of his death. This appeal is from a denial of plaintiff's motion for amended findings of fact and conclusions of law or for a new trial.

The sole question presented here is whether the evidence sustains the court's finding that decedent was a resident of Mower county at the time of his death.

■ Apparently there is no dispute as to the applicable law. M. S. A. 525.82 reads:

"Proceedings for the probate of a will or for administration shall be had in the county of the residence of the decedent at the time of his death; if the decedent was not a resident of this state, proceedings may be had in any county wherein he left any property or into which any property belonging to his estate may have come. * * *

"If proceedings are instituted in more than one county, they shall be stayed except in the county where first legally commenced until final determination of venue. If the proper venue be determined to be in another county, the court, after making and retaining a true copy of the entire file, shall transmit the original to the proper county and proceedings shall be commenced anew in such proper county."

"Residence" as used in this statutory provision means the domicile or true legal residence of the decedent at the time of his death. State ex rel. Selover v. Probate Court, 130 Minn. 269, 153 N. W. 520; 7 Dunnell, Dig. (3 ed.) § 3560d.

■ "Domicile" requires bodily presence coupled with an intention to make it one's home. In re Application of Quale, 213 Minn. 421, 7 N. W. (2d) 153.

■ It must be admitted that until Everett Smith went to the Veterans Hospital the last time he was a resident of Faribault county. In order to acquire a new domicile there must be a union of residence and intention to make it one's home. There is no question in this case but that Everett was bodily present in Mower county when he died. The question therefore resolves itself into one of intention.

The question of domicile is one of fact. Intention may be gathered both from act and from declaration. While recitals in an instrument are not conclusive, they are entitled to great weight. In Seccomb v. Bovey, 135 Minn. 353, 356, 160 N. W. 1018, 1019, we said:

"While it is true that great weight should be given to the recital in a deed or will as to the residence of the person executing such instrument, yet it is also true that such a recital is, by the great weight of authority, not regarded as conclusive on the question of domicile.

"With respect to the evidence necessary to establish the intention to change the domicile, no positive rule can be adopted, but the intention may be gathered both from acts and declarations. Acts are generally regarded as more important than declarations, and written declarations are usually more reliable than oral ones."

■ If it were conceded that decedent had mental capacity to know what he was doing after he left the Veterans Hospital the last time, it could hardly be denied that the evidence amply supports the court's finding that he intended to change his domicile to Mower county. In addition to his acts in unequivocally stating in his will and in his divorce complaint that he was a resident of Mower county, we have the testimony of several old acquaintances and his sister that he had stated to them that he did not intend to return to Faribault county. He also changed his bank account to Mower county. He changed his post-office address from Winnebago to Grand

Meadow. The record also justifies a finding that he and his wife had not been getting along for some time.

There is no doubt but that Everett Smith was suffering from a number of physical ailments. It must also be conceded that he was seriously ill. Physical disability, however, does not necessarily establish mental incapacity. Many people who are seriously disabled physically retain their mental capacities to the end. About the only evidence of mental incapacity that we have in this record is the testimony of plaintiff that, when she called on her husband at the Veterans Hospital on June 5, 1952, he did not know her. That was the last time she saw him alive. Hospital records show that at times he was depressed. They also indicate that at times he knew what he was doing. Even plaintiff's witness, Helen Neuenschwander, admitted that when she called on him in May he appeared as rational as he had ever appeared during the 20 years she had known him. Plaintiff argues that, if he were mentally able to know what he was doing, he would not likely have disinherited a minor daughter, for whose custody he had asked in his divorce complaint shortly prior thereto. There are some things which might well justify a suspicion that at times his mind was not clear, but on the record before us we cannot say that the evidence compels a conclusion of mental incompetence to acquire a new domicile.

There being evidence to sustain the court's findings under the usual rules applicable thereto, the decision must be affirmed.

Affirmed.

MR. JUSTICE NELSON took no part in the consideration or decision of this case.