Paul Gerard **HOESCHEN, Respondent,**

v.

**SOUTH CAROLINA INSURANCE COMPANY, Appellant,**

No. C5–83–1918.

Court of Appeals of Minnesota.

May 22, 1984.

Robert E. Pottratz, Meyer, Meyer & Pottratz, Melrose, for respondent.

Michael J. Ford, Quinlivan & Williams, St. Cloud, for appellant.

Heard, considered and decided by WOZNIAK, P.J., and HUSPENI and NIERENGARTEN, JJ.

## OPINION

NIERENGARTEN, Judge.

This is an appeal from a judgment of the Stearns County District Court denying appellant South Carolina Insurance Company's motion for Summary Judgment and declaring respondent Paul Hoeschen entitled to recover underinsured motorist protection benefits. We affirm.

## FACTS

This appeal arises from an automobile accident that occurred on September 5, 1982. Hoeschen was a passenger in an automobile owned and operated by Kenneth Floyd High, Jr. when that vehicle was in a one-car rollover accident occurring in Stearns County, resulting in serious personal injury to Hoeschen. Both Hoeschen and High were, at the time of the accident, army servicemen on pass from Fort Bragg, North Carolina.

At the time of the accident, Hoeschen had an automobile in North Carolina that was insured by South Carolina. Hoeschen maintained his domicile in Minnesota, including a Minnesota driver's license. The

policy was purchased by Hoeschen in North Carolina and provided $25,000.00 in underinsured motorist coverage. It included a provision that payment would be made only "after the limits of liability under any applicable liability bonds or policies have been exhausted" and only if the tortfeasor's [High's] coverage is "less than the limit of liability for this [underinsured] coverage."

High's insurer paid its liability limits of $25,000.00 into the Stearns County District Court. There is no dispute that Hoeschen's damages exceeded that sum.

South Carolina refused to pay any underinsured motorist benefits to Hoeschen, contending his and High's activities at the time of the accident were incident to their military service, making High immune from suit. It claimed that Hoeschen, not being legally entitled to recover from High as a result of that motor vehicle accident, could not recover any underinsured coverage. In addition, South Carolina asserted its "non-stacking" policy language barred recovery.

Hoeschen then commenced this Declaratory Judgment action and South Carolina responded with a motion for Summary Judgment. The trial court declared the "incident to service" doctrine of intra-military immunity was not applicable nor did the "non-stacking" language of South Carolina's policy bar recovery.

## ISSUES

1. Is a serviceman, injured in an automobile accident while on an unrestricted four-day pass, barred from recovering damages from a fellow serviceman by the doctrine of intra-military tort immunity?

2. Is a Minnesota resident who owns an automobile, insured and garaged in the state of North Carolina, entitled to recover underinsured motorist benefits when injured in a Minnesota accident despite an "anti-stacking" provision in his policy?

## ANALYSIS

### I

South Carolina claims Hoeschen can only recover underinsured motorist benefits when he is legally entitled to recover from a tortfeasor in a motor vehicle accident. It asserts that Hoeschen was not entitled to recover from High because his injuries arose out of or were in the course of activity incident to military service. (High's carrier had deposited its coverage of $25,000.00 with the trial court.). South Carolina's authority is *Feres v. United States*, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950):

> [T]he government is not liable under the Federal Tort Claims Act for injuries to servicemen where their injuries arise out of or are in the course of activity incident to service.

*Id.* at 146, 71 S.Ct. at 159. The doctrine has been extended to individual defendant servicemen, *see Bailey v. DeQuevedo*, 375 F.2d 72 (3rd Cir.) *cert. denied*, 389 U.S. 923, 88 S.Ct. 247, 19 L.Ed.2d 274 (1967); *Bailey v. Van Busirk*, 345 F.2d 298 (9th Cir.1965), *cert. denied*, 383 U.S. 948, 86 S.Ct. 1205, 16 L.Ed.2d 210 (1966), so that High, who drove the accident vehicle, would also be immune from suit. On the other hand, if their activities were not incident to service, injured servicemen would retain their civil cause of action, *see Brooks v. United States*, 337 U.S. 49, 69 S.Ct. 918, 93 L.Ed. 1200 (1949), thereby also retaining their eligibility for underinsured benefits.

The guidelines for defining "incident to service" were recently enunciated by the Eighth Circuit:

> Generally, the *Feres* doctrine applies if the incident occurs (1) on a military base, *or* (2) while the serviceman is on active duty status, *or* (3) under compulsion of military orders or on a military mission or directly subject to military control, *or* (4) the activity is a privilege related to or dependent upon military status. The *Brooks* doctrine is the converse of the *Feres* doctrine and applies if the accident occurs while the serviceman is (1) off the military base, *and* (2) on leave or furlough, *and* (3) not under compulsion of military orders or on a military mission or directly subject to military control,

*and* (4) the activity is not a privilege dependent upon military status.

. . . . .

Therefore, if he is on base or on active duty status, a strong presumption is raised that the injury arose out of the activities incident to military service, just as the opposite presumption is raised when he is off base and on pass, leave or furlough.

*Miller v. United States,* 643 F.2d 481, 483–85 (8th Cir.1980) *rev'd on other grounds on rehearing,* 643 F.2d 490 (8th Cir.1981).

■ Applying these guidelines, we find no "incident to service" activity present at the time of the accident. Both Hoeschen and High were home in Minnesota on pass. There was no evidence they were under orders of any type relating to military duties nor was there any evidence that the pass restricted their activities in any way other than to return to North Carolina at a time certain. The evidence indicates two soldiers were enjoying a social evening together, hardly an activity "incident to service."

There being no intra-military immunity, High became an underinsured motorist liable to Hoeschen to the extent of High's policy liability limits. When those limits were insufficient to compensate Hoeschen, South Carolina had to produce underinsured benefits under Hoeschen's own policy unless its anti-stacking language was enforceable.

## II

South Carolina claims that the following "non-stacking" provision of Hoeschen's policy is enforceable under North Carolina law, the state in which the policy was issued to Hoeschen:

"B. The following provision is added to the definition of "uninsured motor vehicle";

5. to which, with respect to damages for bodily injury only, the sum of the limits of liability under all bodily injury liability bonds and insurance policies applicable at the time of the accident is:

a. equal to or greater than the minimum limit specified by the financial responsibility law of North Carolina; and

b. less than the limit of liability for this coverage".

If South Carolina is correct, then it is clear that Hoeschen would take nothing because the North Carolina underinsured statute describes an "underinsured motor vehicle" as "a highway vehicle with respect to the ownership, maintenance, or use of which, the sum of the limits of liability under all bodily injury liability bonds and insurance policies applicable at the time of the accident is *less than* the applicable limits of liability under this insurance coverage." North Carolina Gen.Stat. § 20–279.21(b)(4). Hoeschen's underinsured coverage was $25,000.00, a sum equal to what he had already recovered from High.

We are initially faced with a decision of whether the trial court correctly rejected the application of North Carolina law. South Carolina claims such rejection violated the Due Process Clause of the Fourteenth Amendment and the Full Faith and Credit Clause of the Constitution.

In deciding whether a state can constitutionally apply its own substantive law, "that State must have a significant contact or significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair." *Allstate Insurance Co. v. Hauge,* 449 U.S. 302, 313, 101 S.Ct. 633, 640, 66 L.Ed.2d 521, *reh'g denied,* 450 U.S. 971, 101 S.Ct. 1494, 67 L.Ed.2d 623 (1981).

■ An examination of the facts reveals that the contacts with the State of Minnesota are significant. South Carolina is licensed to do business in the State of Minnesota and is subject to suit here. The accident occurred in Minnesota and in-

volved a Minnesota resident. In sum, Minnesota has a significant aggregation of contacts with the parties and the occurrence, creating such state interests that application of its law was neither arbitrary nor fundamentally unfair. *Id.* at 320, 101 S.Ct. at 644. There was no violation of the Due Process Clause nor the Full Faith and Credit Clause.

■ Having so concluded, we must now apply choice of law rules to determine which law governs this action. *Hime v. State Farm Fire and Casualty Company,* 284 N.W.2d 829 (Minn.1979) *cert. denied,* 444 U.S. 1032, 100 S.Ct. 703, 62 L.Ed.2d 668 (1980). Conflict of law cases involving the interpretation of insurance contracts have been guided by five choice-influencing considerations: (1) predictability of results, (2) maintenance of interstate order, (3) simplification of the judicial task, (4) advancement of the forum's governmental interest and (5) application of the better rule of law. *See Hague v. Allstate Insurance Co.,* 289 N.W.2d 43, 46 (Minn.1978), *aff'd,* 449 U.S. 302, 101 S.Ct. 633, 66 L.Ed.2d 521 (1981); *Hime v. State Farm Fire & Casualty Co.,* 284 N.W.2d at 833.

(1) "Predictability of results" is unimportant when taking into consideration the unplanned nature of automobile accidents. *Hime,* 284 N.W.2d at 833. (2) "Maintenance of interstate order" requires that the state whose laws are ultimately applied have sufficient contacts with the facts and issue. *Id.* As previously noted, the contacts in Minnesota are substantial. (3) "Simplification of the judicial task" raises no problem for there can be little doubt that the law of either forum could be applied without practical difficulty. *Id.* (4) Minnesota's "governmental interest" in fully compensating accident victims will be advanced by application of Minnesota law. *Id.* Finally, (5) the "better rule of law" clearly mandates application of Minnesota law, for a majority of states, including Minnesota, allow stacking of policies and disregards anti-stacking clauses. *Hague,* 289

N.W.2d at 49. *See Holman v. All Nation Insurance Co.,* 288 N.W.2d 244 (1980).

When an insurance company doing business in a number of states writes a policy on an automobile, the company knows the automobile is a movable item which will be driven from state to state. The company, therefore, accepts the risk that the insured may be subject to liability not only in the state where the policy is written, but also in states other than where the policy is written, and that in many instances those states will apply their own law to the situation.

*Hague v. Allstate Insurance Co.,* 289 N.W.2d at 50 (1979) (on rehearing). All of these factors clearly favor application of Minnesota Law.

South Carolina does not give up. Even if all the foregoing were true, it asserts the trial court still erred in its application of Minnesota law by relying upon *Holman v. All Nation Insurance Co.,* 288 N.W.2d 244 (Minn.1980) as its authority for granting Hoeschen relief.

In *Holman* the Minnesota Supreme Court held that even though the amount of coverage of an underinsured motorist clause of the plaintiff did not exceed the underinsured motorists liability coverage of the tortfeasor, the insurer of the plaintiff could not refuse to pay underinsured motorist benefits under a policy including such benefits. *Id.* at 251.

In order to understand the thrust of that decision, a review of the historical development of underinsured coverage is necessary. A study of that development reveals both a judicial and legislative trend toward allowance of these benefits. Initially, the anti-stacking provision of South Carolina would have been effective under a Minnesota statute requiring insurers to offer underinsured motorist benefits for "uncompensated damages ... to the extent of the policy limits on the vehicle of the [plaintiff] ... less the amount paid by the liability insurer of the [tortfeasor]". Minn.Stat. § 65B.26(d) (1971) as interpreted by *Lick v.*

*Dairyland Insurance Co.*, 258 N.W.2d 791 (Minn.1977). But that statute was subsequently repealed and replaced by Minn. Stat. § 65B.49, subd. 6(e), which mandated an offer of coverage

> in an amount at least equal to the insured's residual liability limits ... [for] damages the insured is legally entitled to recover on account of a motor vehicle accident but which are uncompensated because the total damages exceed the residual liability limit of the owner of the other vehicle.

*Holman* recognized that under *Lick* many underinsurance policies would be worthless:

> Thus, if the *Lick* rule applies to accidents occurring after January 1, 1975 [the effective date of the Minnesota No fault Act], a driver who carries underinsured motorist coverage in an amount equal to the minimum liability coverage required, if hit by another driver carrying either no liability coverage at all or only the minimum required, can collect no underinsured motorist benefits at all.

*Holman*, 288 N.W.2d at 250.

But in April 1980, Minn.Stat. § 65B.49, subd. 6(e) was repealed and so South Carolina contends that the *Holman* rule is no longer applicable. If South Carolina is correct, then the entire legislative policy of adequately compensating injured parties is nullified. The purpose of underinsured motorist protection is "to protect the named insured and other additional insureds from suffering an inadequately compensated injury caused by an accident with an inadequately insured automobile." *Myers v. State Farm Mutual Automobile Insurance Co.*, 336 N.W.2d 288, 291 (Minn.1983).

The repeal of section 65B.49 subd. 6(e) appears to have been in response to the perceived problems of a mandatory offer provision, involving burdens of proof and standards to be applied in determining whether an offer has been made to an insured. The offer of underinsured benefits was made optional, rather than mandatory, to relieve those problems. It has not changed the nature of the coverage. Our Supreme Court has made it clear that it will void policy exclusions even though the coverages are optional rather than mandatory, thereby permitting stacking of benefits. *American Motorist Insurance Co. v. Sarvela*, 327 N.W.2d 77 (Minn.1982). *Cf. Burgraff v. Aetna Life & Casualty Co.*, 346 N.W.2d 627, at 630 (Minn.1984). Consequently, *Holman* remains a judicial guidepost and Hoeschen is entitled to recover underinsured motorist benefits in addition to bodily injury liability benefits to the extent of his damages.

## DECISION

Hoeschen is entitled to recover underinsured motorist protection benefits under the policy issued by South Carolina Insurance Company to the extent actual losses are proved, not to exceed $25,000.00.

Affirmed.