Kirk **JACOBSON** et al., as co-trustees for the heirs of Adam Jacobson, Deceased, Respondents,

v.

**UNIVERSAL UNDERWRITERS INSURANCE GROUP,**
Appellant.

No. CX–01–2031.

Court of Appeals of Minnesota.

June 25, 2002.

Gregory J. Johnson, Karen Melling Van Vliet, Daniel J. Ryan, and Klay C. Ahrens, Johnson & Van Vliet, L.L.P., for appellant.

John M. Degnan, Kelly A. Putney, Bassford, Lockhart, Truesdell & Briggs, P.A., for respondents.

Considered and decided by WILLIS, Presiding Judge, HARTEN, Judge, and HUSPENI, Judge.*

---

* Retired judge of the Minnesota Court of Ap- peals, serving by appointment pursuant to

## OPINION

HARTEN, Judge.

Appellant argues that the district court erred in granting summary judgment for respondents by finding, as a matter of law that arbitration of respondent's underinsured motorist benefits claim should occur in Minnesota and Minnesota law should apply to the claim. Because we conclude that decedent was living in Hennepin County, Minnesota, at the time of the accident, appellant knew that Minnesota law could apply to its policy, and Minnesota has significant ties to the claim, we affirm.

## FACTS

Appellant Universal Underwriters Insurance Company (Universal) issued an insurance policy to respondents Kirk and Karen Jacobson, effective from 1 October 1999 to 1 October 2000. The policy's named insureds included respondents and their son, Adam Jacobson. Respondents live in Gowrie, Iowa, where Adam Jacobson was born and raised.

On 18 May 2000, Adam Jacobson, while a passenger in a friend's car, was killed in a car accident in Hennepin County. At that time, decedent was attending his second year of automobile mechanic classes at Dunwoody Institute in Minneapolis and was approximately a month from graduation. He had rented an apartment in Hopkins and had worked as a clerk at Glenn's Convenience Store in Minnetonka. But he maintained an Iowa driver's license and six days before his death had arranged to have his mail sent to Gowrie, Iowa, upon his graduation from Dunwoody.

Respondents settled a wrongful death tort suit against the driver of the car, collecting the insurance policy limits. In the spring of 2001, respondents sought underinsured motorist benefits from Universal. The parties agree that the policy provides coverage for underinsured benefits. The policy also allows for arbitration of underinsured motorist benefits claims in certain circumstances:

> With respect to BODILY INJURY, if WE and an INSURED can't agree whether the INSURED is legally entitled to recover DAMAGES from the owner or driver of an UNINSURED MOTOR VEHICLE or do not agree as to the amount of DAMAGES, either party may make a written demand for arbitration.
>
> Unless both parties agree otherwise, arbitration will take place in the county in which the INSURED lives. Local rules of law as to arbitration procedure and evidence will apply.

Respondents made written demand for arbitration to take place in Hennepin County; Universal insisted that arbitration occur in Iowa. The parties filed cross-motions for summary judgment on the issue of arbitration venue and whether Minnesota or Iowa law should apply to the claim. On 25 October 2001, the district court granted summary judgment to respondents directing that arbitration be held in Hennepin County. This appeal followed.

## ISSUES

1. Did the district court correctly hold that arbitration should occur in Hennepin County?

2. Did the district court correctly find that Minnesota law should govern the arbitration claim?

## ANALYSIS

On an appeal from summary judgment, we ask whether there are any genuine

Minn. Const. art. VI, § 10.

issues of material fact and whether the lower courts erred in their application of the law. *State by Cooper v. French*, 460 N.W.2d 2, 4 (Minn.1990). "[T]he reviewing court must view the evidence in the light most favorable to the party against whom judgment was granted." *Fabio v. Bellomo*, 504 N.W.2d 758, 761 (Minn.1993) (citation omitted).

### 1. Venue

■ The district court granted respondents' motion for summary judgment, holding that arbitration should occur in Hennepin County and noting that "[t]he plain reading and intent of the policy requires that [decedent] be living in the county where arbitration should occur." The interpretation of an insurance policy is a question of law subject to de novo review. *Metro. Prop. & Cas. Ins. Co. v. Miller*, 589 N.W.2d 297, 299 (Minn.1999).

Universal argues that the district court erroneously focused on decedent as the "insured." Universal contends that respondents Kirk and Karen Jacobson are the "insured[s]" referred to in the policy.

The policy section covering underinsured motor vehicles defines the "INSURED" as

(1) YOU

* * * *

(4) anyone for DAMAGES they are entitled to recover because of BODILY INJURY sustained by another INSURED.

The policy defines "YOU" as a named insured under the policy. Decedent could recover damages under this definition because he is a named insured.[1] The arbitration clause does not limit the "insured" to a living person. The policy calls for arbitration when the parties cannot agree on the amount of damages due to "bodily injury." The policy's definition of bodily injury includes death; and the policy indicates that a decedent's representative could claim damages. Respondents also could recover damages because they, as decedent's next of kin, are entitled to damages occasioned by his death.

Respondents have brought this claim in a representative capacity as co-trustees for decedent's heirs. They have not brought the suit as named insureds or in their personal capacities seeking damages. Accordingly, under the structure of this claim, we conclude that decedent, not respondents, is the "insured" referred to in the arbitration clause.

■ Notwithstanding the above conclusion, we note that the arbitration clause is ambiguous as applied because both decedent and respondents fit the policy's definition of "insured." *See Jenoff, Inc. v. New Hampshire Ins. Co.*, 558 N.W.2d 260, 262 (Minn.1997) ("Ambiguity exists if the language of the policy is reasonably subject to more than one interpretation.") (citation omitted). We are obliged to resolve this ambiguity against the insurer and in accordance with the reasonable expectations of the insured. *Id.* (citation omitted); *see also General Mills, Inc. v. Gold Medal Ins. Co.*, 622 N.W.2d 147, 151 (Minn.App. 2001) (when policy is ambiguous, courts apply the doctrine of contra proferentem and resolve ambiguities against the drafter), *review denied* (Minn. Apr. 17, 2001). Accordingly, the arbitration clause is to be construed against Universal, the drafter

---

1. Appellant argues that decedent's status as an insured under the policy is irrelevant because Iowa law permits survivors to recover under their own policies even if the decedent is not covered by these policies. *See Wether-* *bee v. Econ. Fire & Cas. Co.*, 508 N.W.2d 657, 661 (Iowa 1993). Iowa law is not binding on this court. And, unlike *Wetherbee*, this is not a coverage case.

and the insurer; such construction would mean that decedent is the "insured."

Finally, Universal contends that even if decedent is the "insured" referred to in the arbitration clause, arbitration should occur in Iowa because decedent intended to live in Iowa after he graduated. But the policy states that, "arbitration will take place in the county in which the INSURED lives." This language is unambiguous and should be given its plain and ordinary meaning. *See Lobeck v. State Farm Mut. Auto. Ins. Co.*, 582 N.W.2d 246, 249 (Minn.1998). At the time of the accident, decedent lived in a rented apartment in Hopkins, attended classes in Minneapolis, and worked in Minnetonka. In short, he lived in Hennepin County. And because the policy uses "to live" in the present tense, it is irrelevant where decedent "intended to live" after graduation.

The district court correctly decided that arbitration should occur in Hennepin County.

## 2. Choice of law

■ Before applying a choice-of-law analysis, a court should first decide if there is a conflict between the laws of the two forums. *Nodak Mut. Ins. Co. v. Am. Family Mut. Ins. Co.*, 604 N.W.2d 91, 93–94 (Minn.2000). As relevant to the instant case, Minnesota law allows for recovery of pecuniary loss, including financial support, comfort, guidance, and protection that decedent would have provided for his next of kin. Under Iowa law, damages would be based on the estimated value of the estate that decedent would have accumulated minus what he would have been expected to consume. The parties agree that there is a conflict.[2]

**2.** The parties also agree that either state has sufficient contacts to the case so the law of either state could be constitutionally applied.

■ Minnesota courts have adopted the significant contacts test for determining which state's law should apply. The test examines the following five factors:

(1) Predictability of results;

(2) Maintenance of interstate and international order;

(3) Simplification of the judicial task;

(4) Advancement of the forum's governmental interest; and

(5) Application of the better rule of law.

*Id.* at 94 (citations omitted). We will consider each factor.

### (1) Predictability of Results

[6] This factor

represents the ideal that litigation on the same facts, regardless of where the litigation occurs, should be decided the same to avoid forum shopping.

*Id.* Courts place more emphasis on this factor in contract cases so parties have advance notice of which legal system will govern a dispute arising from their contract. *Jepson v. Gen. Cas. Co. of Wisconsin*, 513 N.W.2d 467, 470 (Minn.1994).

■ Due to the "unplanned nature of automobile accidents," this factor is less important in automobile insurance cases. *Nodak*, 604 N.W.2d at 94 (*quoting Hime v. State Farm Fire & Cas. Co.*, 284 N.W.2d 829, 833 (Minn.1979)). When Universal issued its policy to respondents, decedent was already living in Minnesota. Obviously, Universal could foresee that decedent could be involved in a Minnesota accident and that Minnesota law might be applied to its policy. This factor favors Minnesota law. *See Gimmestad v. Gimmestad*, 451 N.W.2d 662, 666 (Minn.App.1990) (predictability of results factor favored applying Minnesota law to an insurance policy is-

*See Jepson v. Gen. Cas. Co. of Wisconsin*, 513 N.W.2d 467, 469 (Minn.1994).

sued in Texas when an insured was in an accident in Minnesota).

### (2) Maintenance of Interstate Order

 This factor is primarily concerned with whether the application of Minnesota law would manifest disrespect for [Iowa's] sovereignty or vice versa or impede the interstate movement of people and goods. *Medtronic, Inc. v. Advanced Bionics Corp.*, 630 N.W.2d, 438, 455 (Minn.App. 2001) (citation omitted). Courts examine the contacts between the forum state and the case to determine whether to apply the forum state's law. *Jepson*, 513 N.W.2d at 471.

The instant case is the type of case that we have recognized to favor application of Minnesota law. The accident occurred in Minnesota, decedent was living in Minnesota, and the summary judgment motions were filed in a Minnesota court. *See Gimmestad*, 451 N.W.2d at 666 (similar factors favored application of Minnesota law to determine an underinsured motorist benefits claim). Additionally, decedent was riding in a vehicle registered in Minnesota. This factor favors application of Minnesota law.

### (3) Simplification of the Court's Judicial Task

Both parties agree that the arbitrators would be able to correctly apply either Minnesota or Iowa law. Although this factor might be insignificant, this court has recognized that "the judicial task is obviously simplified when a Minnesota court applies Minnesota law." *Medtronic*, 630 N.W.2d at 455 (quotation omitted). The same would be true of Minnesota arbitrators applying Minnesota law. Assuming that Minnesota arbitrators would hear the claim, this factor slightly favors application of Minnesota law.

### (4) Advancement of the Forum's Governmental Interest

 This factor examines "which choice of law most advances a significant interest of the forum." *Nodak*, 604 N.W.2d at 95 (quotation omitted). Minnesota courts have a recognized interest in seeing that all tort victims are fully compensated. *See Jepson*, 513 N.W.2d at 472 (noting that this is an important governmental interest). This interest is not limited to residents. *See Gimmestad*, 451 N.W.2d at 666 (nonresident should be fully compensated). Decedent lived in Minnesota at the time of the accident, and the accident occurred here. Minnesota courts "are not called upon to apply rules of law inconsistent with Minnesota's concept of fairness and equity." *Medtronic*, 630 N.W.2d at 455 (quotation omitted). Unlike Minnesota law, Iowa law does not allow for the recovery of pecuniary losses. In applying Iowa's law, the arbitrators would not compensate decedent's beneficiaries to the full extent allowed by Minnesota law. This factor also favors application of Minnesota law.

### (5) Application of the Better Rule of Law

 Because the first four factors favor application of Minnesota law, we need not address the better rule of law factor. *See Medtronic*, 630 N.W.2d at 455–56; *see also Nodak*, 604 N.W.2d at 96 (the supreme court has not emphasized this factor for nearly 20 years).

In summary, the factors generally favor application of Minnesota law. Even in close cases, the supreme court has determined that the state where the accident occurred has the strongest governmental interest and its law should apply. *Nodak*, 604 N.W.2d at 92. We conclude that the district court correctly determined that

Minnesota law should apply to the arbitration claim.

## DECISION

We hold that arbitration should occur in Hennepin County and that Minnesota law should be applied by the arbitrator.

**Affirmed.**