Steven **SCHOSSOW**, as trustee for the heirs and next of kin of Ann Elizabeth Schossow, deceased, Respondent,

v.

**FIRST NATIONAL INSURANCE COMPANY OF AMERICA,**
Appellant.

No. A06–1003.

Court of Appeals of Minnesota.

May 1, 2007.

Robert G. Manly, Vogel Law Firm, Moorhead, MN, for respondent.

Chris A. Edison, Storslee Law Firm, Bismarck, ND, for appellant.

Considered and decided by PETERSON, Presiding Judge, WORKE, Judge, and CRIPPEN, Judge.

## OPINION

CRIPPEN, Judge.*

Appealing the district court's summary judgment, appellant First National Insur-

---

* Retired judge of the Minnesota Court of Ap- peals, serving by appointment pursuant to

ance Company of America disputes the district court's determination that appellant is liable to respondent Steven Schossow for underinsured motorist benefits in accordance with Minnesota law. Appellant issued a policy to respondent in North Dakota, which defines underinsured motorist coverage more restrictively than Minnesota. Because the district court's decision comports with the evidence and with Minnesota's no-fault statutes, we affirm.

## FACTS

This dispute arose out of respondent's claim for underinsured motorist benefits from his automobile insurer. In November 2002, Ann Schossow died from injuries that she sustained in an accident in which she was struck by a vehicle while she was walking to work from her apartment in St. Louis Park, Minnesota.

Respondent and his wife Ann had lived in Fargo, North Dakota, where she had worked for Qwest Communications. In 2000, when her Fargo job was eliminated, Ann Schossow accepted Qwest's offer for employment in Minnesota. She intended to live and work in Minnesota until 2005, when her Qwest pension would vest. In January 2001, she rented an apartment in the Twin Cities and began work in her new position. She returned to Fargo an average of one weekend a month.

In May 2002, the Schossows obtained automobile insurance from appellant for a vehicle that they purchased for Ann Schossow. The agent who issued the policy became aware in December 2001 that Ann, who had an accident with her prior vehicle at that time, was living and working in Minnesota and planned to stay in Minnesota until her retirement with Qwest. Appellant is licensed to write insurance policies in both North Dakota and Minnesota.

The Schossows had other policies with appellant for vehicles that respondent drove. Appellant issued all policies to the couple at their Fargo address, including the policy in question covering Ann's vehicle. The couple registered this vehicle in North Dakota and obtained a certificate of title using their Fargo address. Ann had also renewed her North Dakota driver's license while she lived in Minnesota.

After Ann Schossow's death, respondent settled with the driver's insurance company for the driver's liability coverage limit of $100,000 and then sought underinsured motorist benefits under his policy with appellant for his excess damages. Appellant denied the claim based on North Dakota law, which provided for "difference-in-limits" coverage—with no benefits in this case because respondent's underinsured motorist policy limit was also $100,000.

In respondent's subsequent suit, the district court denied appellant's summary judgment motion and entered judgment for respondent, concluding that Ann Schossow was a Minnesota resident at the time of her fatal accident, and, therefore, Minn.Stat. § 65B.50, subd. 1 (2006), requires appellant, an insurer licensed to write policies in Minnesota, to provide respondent with "add-on" underinsured benefits, allowing for recovery of respondent's uncompensated loss up to the amount of his underinsured motorist limit, $100,000. Appellant argues that Ann Schossow was not a Minnesota resident because her domicile was in North Dakota and that in any case the policy was never renewed, delivered or issued for delivery, or executed in Minnesota.

Minn. Const. art. VI, § 10.

## ISSUES

1. Did the district court err by concluding that Ann Schossow was a Minnesota resident at the time of her fatal accident?

2. Did the district court err by applying Minnesota law regarding underinsured motorist coverage to a Minnesota resident when the policy, which included underinsured motorist benefits, was never renewed, delivered or issued for delivery, or executed in Minnesota?

## ANALYSIS

On appeal from summary judgment, we determine whether there are any genuine issues of material fact and whether the district court erred in its application of the law. *Funchess v. Cecil Newman Corp.*, 632 N.W.2d 666, 672 (Minn.2001). We view the evidence in the light most favorable to the party against whom judgment was granted. *Fabio v. Bellomo*, 504 N.W.2d 758, 761 (Minn.1993).

Respondent's policy conforms to North Dakota law for underinsured motorist coverage, in which a tortfeasor driver is considered underinsured when the driver's liability coverage does not at least equal the amount of underinsured motorist coverage carried by the injured insured. N.D. Cent.Code § 26.1–40–15.1(2) (2005); *DeCoteau v. Nodak Mut. Ins. Co.*, 603 N.W.2d 906, 909–12 (N.D.2000). By contrast, under Minnesota law, a tortfeasor driver is considered underinsured when the driver's liability coverage does not at least equal the amount needed to compensate the injured insured for actual damages. Minn. Stat. § 65B.43, subd. 17 (2006).

The parties do not dispute that respondent's actual damages exceed the $100,000 maximum benefit paid by the tortfeasor's insurer. Minnesota's "add-on" approach allows respondent to recover from appellant the amount of actual damages, less the settlement amount of $100,000, up to the amount of respondent's underinsured coverage, $100,000. *See* Minn.Stat. § 65B.49, subd. 4a (2006) (stating that "[w]ith respect to underinsured motorist coverage, the maximum liability of an insurer is the amount of damages sustained but not recovered from the insurance policy of the driver or owner of any underinsured at fault vehicle.").

## I.

 Minnesota requires that every insurer licensed to write automobile insurance in the state provide at least the minimum security required by Minn.Stat. § 65B.49 (2006) to all policyholders, except that in the case of "nonresident" policyholders it need only provide security with respect to accidents occurring in Minnesota. Minn.Stat. § 65B.50, subd. 1 (2006); *see also* Minn.Stat. § 65B.49, subds. 3a–4a (defining Minnesota's underinsured motorist coverage requirements). The "security" required for all insurance policies covering nonresidents includes only basic-economic loss and residual-liability coverages. *Ziegelmann v. Nat'l Farmers Union Prop. & Cas. Cos.*, 686 N.W.2d 563, 567 (Minn.App.2004), *review denied* (Minn. Dec. 14, 2004). If nonresidents purchase underinsured motorist coverage, it does not need to comply with Minnesota law. *Warthan v. Am. Family Mut. Ins. Co.*, 592 N.W.2d 136, 138–39 (Minn.App.1999) (concluding that under Minn.Stat. § 65B.50, subd. 1, even insurers licensed to write insurance in Minnesota are not required to furnish uninsured motorist coverage to nonresidents), *review denied* (Minn. July 28, 1999). To resolve the additional issue in this case, we must first address whether Ann Schossow is considered a "resident" of Minnesota.

 The terms "resident" and "nonresident" are not defined anywhere in Minn.

Stat. ch. 65B, which deals with automobile insurance. Appellant argues that the undisputed [1] facts of this case support the conclusion that Ann Schossow was a North Dakota resident because she represented herself as one. Appellant points out that Ann renewed her North Dakota driver's license, registered and titled her car in North Dakota, and declared her intention to return permanently to North Dakota after becoming vested in her Qwest pension. Her 2002 W–2 form contained only her North Dakota address, and the Schossows' 2002 tax returns indicated that they were both full-year residents of North Dakota.

The district court concluded, under a "plain and simple analysis," that Ann Schossow was a Minnesota resident because she lived here continuously and worked here full time, with only one weekend visit per month to North Dakota. This analysis conforms to governing precedents.

The district court cited *Jacobson v. Universal Underwriters Ins. Group*, in which we affirmed the district court's determination as a matter of law that Minnesota law should apply to an underinsured motorist claim on behalf of a student who was killed in an automobile accident in Minnesota while he was going to school here. 645 N.W.2d 741, 746–47 (Minn.App.2002).

It was determinative in *Jacobson* that "[d]ecedent lived in Minnesota at the time of the accident, and the accident occurred here." *Id.* at 746. Our opinion stated Minnesota's "important governmental interest" in seeing that all tort victims are

fully compensated. *Id.* We discounted the importance of facts that the student maintained an Iowa driver's license and would be returning to live in his parents' home in one month when he graduated from school. *Id.* at 743–45.

Our decision in *Schoer v. West Bend Mut. Ins. Co.* also supports the district court's determination, although the facts in *Schoer* contrast with those of the present case. *Schoer v. West Bend Mut. Ins. Co.*, 473 N.W.2d 73, 74 (Minn.App.1991). Schoer was involved in a Minnesota automobile accident and sought underinsured benefits under his mother's Wisconsin policy. *Id.* We upheld a jury's finding that Schoer was a resident of his mother's home in Wisconsin at the time of the accident because, while attending school here, Schoer did not establish a single residence separate from his mother's household. *Id.* 76–77. He lived out of a suitcase in many different places for short periods, and he returned to his Wisconsin home as often as possible, including stays of a few months at a time. *Id.* at 74, 76–77. Unlike Shoer's transient status, Ann Schossow had established a residence in Minnesota, went back to North Dakota infrequently, and planned to stay in Minnesota for a few more years.

Appellant relies on our decision in *Hoeschen v. South Carolina Ins. Co.* for the proposition that "residency" for the purpose of Minn.Stat. § 65B.50, subd. 1, should be interpreted to mean "domicile." *See Hoeschen v. South Carolina Ins. Co.*, 349 N.W.2d 833, 834–35 (Minn.App.1984) (discussing domicile), *aff'd on other grounds*, 378 N.W.2d 796 (Minn.1985).

---

1. We find no merit to appellant's argument that the district court erred by deciding the residency question as a matter of law. The parties agreed that the underlying facts were undisputed, in which case a district court may properly determine residency as a matter of law. *French v. State Farm Mut. Auto. Ins.*

Co., 372 N.W.2d 839, 841 (Minn.App.1985) (affirming district court's determination of residency when parties had stipulated to relevant facts and district court concluded that ultimate interpretation of "reside" involved merely a "characterization" of those facts).

"Domicile" is a person's permanent home, to which that person intends to return and remain even though currently residing elsewhere. Black's Law Dictionary 523 (8th ed.2004). Appellant cites *Hoeschen* for more than it says.

Hoeschen was a military serviceman living and working in North Carolina and domiciled in Minnesota when he was injured in an automobile accident in this state. *Hoeschen,* 349 N.W.2d at 834–35. We determined that a person must be a Minnesota resident, as Hoeschen was, to obtain Minnesota underinsured motorist benefits. *Id.* at 837. One's Minnesota domicile may be a residence for an accident here, but *Hoeschen* does not preclude the person domiciled elsewhere from also having a residence in Minnesota. *See also Am. Family Mut. Ins. Co. v. Thiem,* 503 N.W.2d 789, 790–91 (Minn.1993) (stating that deceased child was resident of divorced father's household and mother's household within definition of "insured" under coverage of father's automobile insurance policy).

■ As a general rule, "while a person can have only one domicile, [the person] can have more than one residence." *Mut. Serv. Cas. Ins. Co. v. Olson,* 402 N.W.2d 621, 624 (Minn.App.1987), *review denied* (Minn. May 20, 1987); *see Krause by Krause v. Mut. Serv. Cas. Co.,* 399 N.W.2d 597, 601–02 (Minn.App.1987) (holding that child was a resident of both parents' households under the Minnesota No–Fault Act). Nothing in Minn.Stat. § 65B.50 suggests that a person can be a resident of only one state.

The remaining cases that appellant cites to support its argument that residence means domicile are inapplicable to the present case. *See Dreyling v. Comm'r of Revenue,* 711 N.W.2d 491, 494–96 (Minn. 2006) (applying income tax statute that defines resident as any individual domiciled in Minnesota); *In re Smith's Estate,* 242 Minn. 85, 88, 64 N.W.2d 129, 131 (1954) (interpreting residence as used in probate statutory provision to mean decedent's domicile at time of death). That Ann Schossow's legal domicile was the family home in North Dakota does not determine the meaning of residency in Minn.Stat. § 65B.50, subd. 1.

## II.

■ Appellant asserts, alternatively, that even if Ann Schossow was a Minnesota resident at the time of her accident, the district court erred by requiring appellant to provide respondent with Minnesota underinsured motorist benefits, because appellant issued the policy to the Schossows' North Dakota address and never renewed the policy while Ann Schossow was living in Minnesota.

Any automobile insurance policy that is "renewed, delivered or issued for delivery, or executed in [Minnesota] with respect to any motor vehicle registered or principally garaged in [Minnesota]" must provide underinsured motorist coverage under Minnesota law. Minn.Stat. § 65B.49, subd. 3a(1) (2006) (defining Minnesota's underinsured motorist coverage requirements). But under Minn.Stat. § 65B.49, subd. 1, every insurer licensed to write automobile insurance must "afford at least the minimum security provided by section 65B.49 to all policyholders," with the exception for nonresidents as already discussed.

Because Minn.Stat. § 65B.49, subds. 3a and 4a, define required underinsurance coverage, we address whether a Minnesota licensed insurer who issues a policy in North Dakota, including underinsurance benefits as required by North Dakota law, to a resident of Minnesota is required to provide underinsurance coverage under Minnesota law.

Appellant relies on *Cantu v. Atlanta Cas. Cos.*, 535 N.W.2d 291 (Minn.1995), to support its argument. The supreme court reversed our decision that Cantu's policy issued out of state automatically provided uninsured motorist coverage when he became a Minnesota resident. *Id.* at 291–92. But *Cantu* arose in markedly different circumstances: Cantu rejected uninsured motorist coverage from his Florida insurer. *Cantu v. Atlanta Cas. Cos.*, 532 N.W.2d 261, 262 (Minn.App.1995), *rev'd,* 535 N.W.2d 291 (Minn.1995).[2]

■ The Schossows, in contrast, purchased underinsured motorist benefits from appellant, their North Dakota insurer. Unquestionably, a policy specifically incorporating Minnesota underinsured coverage is required only when issued in this state. But it does not follow that an insurer who writes a policy with an underinsured motorist provision in another state, does not certify for Minnesota residents, under Minn.Stat. 65B.50, subd. 1, that they will be afforded the full benefits as provided by Minnesota law. *See Warthan,* 592 N.W.2d at 139 (stating that under *Hoeschen,* "when a Minnesota resident is injured in an accident in Minnesota, the resident's [underinsured motorist] policy will be reformed to comply with Minnesota law."). The language of Minn.Stat. § 65B.50, subd. 1, which states that "[e]very insurer licensed [in Minnesota] shall ... afford at least the minimum security provided by section 65B.49 to all [resident] policyholders," is a compelling matter of law, whereby we uphold the district court's determination of benefits coverage.[3]

Our deference to the dictates of Minn. Stat. § 65B.50, subd. 1, is enlarged by Minnesota's strong governmental interest in providing for coverage to alleviate severe economic distress on uncompensated persons injured in automobile accidents in Minnesota. The no-fault law exists to deal with the "detrimental impact of automobile accidents on uncompensated injured persons," and to promote the "orderly and efficient administration of justice in this state." Minn.Stat. § 65B.42 (2006). Minnesota has a strong policy of extending coverage rather than allowing coverage to be restricted. *Maher v. All Nation Ins. Co.*, 340 N.W.2d 675, 679 (Minn.App.1983), *review denied* (Minn. Apr. 25, 1984). Appellant is required to extend underinsured motorist coverage to respondent.

### DECISION

The district court did not err by concluding that Ann Schossow was a Minnesota resident at the time of her accident and that respondent is entitled to underinsured motorist benefits in accordance with Minnesota law.

**Affirmed.**

---

**2.** Under *Cantu,* a federal court states, "the Court will not read [UIM] into the policies." *Ray v. State Farm Mut. Auto. Ins. Co.*, CIV. 06–277, 2007 WL 172559, at *5 (D.Minn. Jan. 19, 2007). *Ray,* noted in argument by appellant, similarly declines to recognize UIM coverage when none was purchased by the insured when they last purchased their policy in Michigan.

**3.** Respondent also contends that the requirements of Minn.Stat. § 65B.49, subd. 3a(1), were satisfied because, unlike *Cantu,* in which the insurer did not become aware that Cantu had become a Minnesota resident until after his wife was killed in a Minnesota automobile accident, appellant knew or should have known several months before Ann Schossow's fatal accident that she was living and working in Minnesota. We need not reach this issue because we hold that benefits in this case are determined by section 65B.50, not section 65B.49.