# United States Court of Appeals
### For the Eighth Circuit

_____

No. 19-1416
_____

Toni Brill, as the Trustee for the Surviving Next-of-Kin
of Richard Brill, deceased

*Plaintiff - Appellant*

v.

Mid-Century Insurance Company,
part of the Farmers Insurance Group of Companies

*Defendant - Appellee*
_____

Appeal from United States District Court
for the District of Minnesota
_____

Submitted: March 10, 2020
Filed: July 15, 2020
_____

Before ERICKSON, GRASZ, and KOBES, Circuit Judges.
_____

GRASZ, Circuit Judge.

This appeal involves a dispute between Toni Brill and Mid-Century Insurance Company over the amount Mid-Century owes to Toni after her husband, Richard, was

struck and killed by an underinsured motor vehicle. Toni appeals the district court's[1] award of summary judgment to Mid-Century. We affirm.

## I. Background

The Brills lived together in Wisconsin when Mid-Century issued them an automobile policy effective from March 2015 to March 2016. In May or June of 2015, Richard moved in with a friend in Duluth, Minnesota, after separating from Toni, who remained in Wisconsin.[2]

Later, in September of that year, while riding his bicycle in the Duluth area, Richard was killed after being negligently hit by a car operated by Lowell Rudd. Rudd had an insurance policy on his vehicle, but its $100,000 limit for bodily injury liability was not enough for the more than $350,000 needed to compensate for Richard's bodily injury and resulting death. Richard's wife Toni agreed to settle a wrongful death lawsuit, collecting $103,000 from Rudd and his insurer. This case centers on Toni's subsequent effort to recover from the Brills' own insurer, Mid-Century, the difference between the damages suffered and the amount collected from Rudd.

The Brills' Mid-Century policy includes underinsured motor vehicle ("UIM") coverage, with a per-person limit of $250,000. The parties disputed how much Mid-Century was required to pay. Mid-Century argued the policy language dictates a "limits-less-paid" approach, under which the $103,000 Toni recovered is deducted

---

[1]The Honorable Leo I. Brisbois, United States Magistrate Judge for the District of Minnesota, to whom the case was referred for final disposition by consent of the parties pursuant to 28 U.S.C. § 636(c).

[2]The facts are recounted in the light most favorable to Toni, with all reasonable inferences granted to her. *See Lexicon v. ACE Am. Ins. Co.*, 634 F.3d 423, 425 (8th Cir. 2011).

from the $250,000 policy limit. On the other hand, Toni argued Minnesota law dictates an "add-on" approach should apply, under which she is entitled to add the $250,000 policy limit to the $103,000 recovered, so long as the resulting total does not exceed the total damages awarded.

The Brills' policy prescribes the limits-less-paid approach advanced by Mid-Century. Specifically, it states Mid-Century's "maximum liability under the [UIM coverage] is the amount of *the applicable limits less any amounts recovered* from any person . . . that may be legally responsible for the bodily injury or death for which the payment is made . . . ." (emphasis added). And it is undisputed the law of Wisconsin — where the Brills resided when the policy was issued — expressly permits such a limits-less-paid approach. *See* Wis. Stat. § 632.32(5)(i)(1) ("A policy may provide that the limits under the policy for . . . [UIM] coverage for bodily injury or death resulting from any one accident shall be reduced by . . . [a]mounts paid by or on behalf of any person . . . that may be legally responsible for bodily injury or death for which the payment is made.").

Nonetheless, Toni argued she is entitled to recover under the add-on approach, which Minnesota law requires insurers to offer within that state. *See* Minn. Stat. § 65B.49, subdiv. 4a (stating "the maximum liability of an insurer is the amount of damages sustained but not recovered from the insurance policy of the driver or owner of any underinsured at fault vehicle"). Toni claimed this approach was applicable because Mid-Century was licensed to write policies in Minnesota and, at the time of the Minnesota accident, Richard had moved to Minnesota and was residing in the state.[3]

---

[3]Mid-Century denied Richard was residing in Minnesota at the time of accident and points to certain facts it claims show his permanent residence was in Wisconsin. But for purposes of reviewing summary judgment awarded to Mid-Century, we assume he was residing in Minnesota.

The district court agreed with Mid-Century's view that Minnesota's add-on approach was not implicated because the policy was issued in Wisconsin to a Wisconsin resident and had not been renewed after Richard moved to Minnesota. Thus, the district court granted Mid-Century's motion for summary judgment, denied Toni's motion for summary judgment, and concluded Mid-Century owed Toni $147,000 under the policy's limits-less-paid approach. Toni appeals, arguing we should reverse the award of summary judgment to Mid-Century or alternatively certify the state-law question to the Minnesota Supreme Court.

## II. Legal Standard

"This court reviews de novo 'the district court's grant of summary judgment and its interpretation of state insurance law.'" *C.S. McCrossan, Inc. v. FDIC*, 932 F.3d 1142, 1144–45 (8th Cir. 2019) (quoting *Grinnell Mut. Reinsurance Co. v. Schwieger*, 685 F.3d 697, 700 (8th Cir. 2012)). "The question is whether the record, viewed most favorably to the non-moving party, shows no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Id.* at 1145 (quoting *Volk v. Ace Am. Ins. Co.*, 748 F.3d 827, 828 (8th Cir. 2014)).

The parties both focus on Minnesota case law to determine whether Minnesota's No Fault Act requires Toni's UIM claim be calculated under the add-on approach. We are "'bound by the decision of the Minnesota Supreme Court' when interpreting Minnesota law." *Id.* (quoting *Integrity Floorcovering, Inc. v. Broan-Nutone, LLC*, 521 F.3d 914, 917 (8th Cir. 2008)). Where the Minnesota Supreme Court has not spoken on an issue, we must predict how it would decide the issue. *Id.* To do so, we "may consider relevant state precedent, analogous decisions, considered dicta . . . and any other reliable data." *Id.* (ellipses in original) (quoting *Integrity Floorcovering*, 521 F.3d at 917).

-4-

## III. Discussion

We begin our analysis with this observation — Mid-Century and the Brills negotiated a policy that unambiguously provides that a UIM claim be calculated using the limits-less-paid approach. The Mid-Century policy was issued in Wisconsin when both Toni and Richard were Wisconsin residents. And Wisconsin law permits such an approach. Wis. Stat. § 632.32(5)(i)(1). Consequently, under the district court's order, Toni would receive precisely the UIM coverage amount agreed upon by the Brills and Mid-Century.

The question we must answer is this: Does the fact Mid-Century was licensed to write policies in Minnesota, combined with Richard's subsequent move to and residency there, dictate that the Mid-Century policy must be reformed to calculate UIM coverage under Minnesota's add-on approach? We conclude it does not.

Section 65B.49 of the Minnesota Statutes governs the mandatory offer of insurance benefits. And subdivision 3a of this section governs an insurer's requirement to provide minimum UIM (and uninsured) coverage. It provides that "[n]o plan of reparation security may be *renewed, delivered, or issued for delivery, or executed in [Minnesota]* with respect to any motor vehicle registered or principally garaged in [Minnesota] unless separate . . . [UIM] coverage[ is] provided therein." § 65B.49, subdiv. 3a(1) (emphasis added). It further provides that minimum coverage be at least $25,000 for the injury or death of a person. *Id.* Then, in subdivision 4a, the statute sets forth the add-on method for calculating [UIM] coverage. § 65B.49, subdiv. 4a.

Consistent with the plain language of the statute, the Minnesota Supreme Court has held that in order for Minnesota law to mandate an insurer provide uninsured coverage consistent with that required by section 65B.49, the insurance policy had to be "renewed, delivered, or issued for delivery, or executed in [Minnesota]." *Cantu v.*

-5-

*Atlanta Cas. Cos.*, 535 N.W.2d 291, 292 (Minn. 1995) (quoting § 65B.49, subdiv. 3a(1)).[4] This was true even when the insured relocated to and resided in Minnesota after obtaining a policy but before the accident. *Cantu v. Atlanta Cas. Cos.*, 532 N.W.2d 261, 262, 264 (Minn. Ct. App.), *rev'd*, 535 N.W.2d 291 (Minn. 1995). Applying the rationale of *Cantu* to the facts here, even though Richard had relocated to Minnesota before the accident, the add-on method for calculating UIM coverage is not required, because the policy was issued, executed, and delivered in Wisconsin, and had not been renewed while Richard was residing in Minnesota.

Toni argues *Cantu* and subdivision 3a are not relevant and urges that we should instead focus on subdivision 1 of section 65B.50, which provides that "[e]very insurer licensed to write motor vehicle accident reparation and liability insurance in [Minnesota] shall . . . as a condition to such licensing . . . file with the commissioner and thereafter maintain a written certification that it will afford at least minimum security provided by section 65B.49 to all policyholders . . . ." § 65B.50, subdiv. 1. According to Toni, this mandate requires insurers such as Mid-Century, that issue liability insurance in Minnesota, to calculate UIM coverage for motor vehicles garaged within the state according to the add-on method detailed in section 65B.49, subdiv. 4a, regardless of whether the policies had been renewed, delivered, issued for delivery, or executed within Minnesota.

Toni points to *Schossow v. First Nat'l Ins. Co. of Am.*, where the Minnesota Court of Appeals both distinguished[5] *Cantu* and offered its own interpretation of

_____

[4]*Cantu* dealt with uninsured coverage, which is largely subject to the same statutory requirements as UIM coverage under Minnesota law. *See* § 65B.49, subdiv. 3a.

[5]The court in *Schossow* distinguished *Cantu*, noting the insured in *Cantu* "rejected uninsured motorist coverage from his Florida insurer." *Schossow First Nat'l Ins. Co. of Am.*, 730 N.W.2d 556, 562 (Minn. Ct. App. 2007). In contrast, the

sections 65B.49 and 65B.50, subdiv. 1. 730 N.W.2d 556, 561–62 (Minn. Ct. App. 2007) The court in *Schossow* determined an insurer was required to calculate UIM coverage according to Minnesota's add-on method for a Minnesota resident, even though the policy was issued out of state and directed a limits-less-paid method of calculation. *Id.* We decline to follow the interpretative approach set forth in *Schossow* for the following reasons.

First, the facts in *Schossow* are distinguishable from the present case. Unlike Richard, the insured in *Schossow* was a resident of Minnesota at the time the policy was issued in North Dakota. *Id.* at 558, 559–60. This is significant because, as the court in *Schossow* acknowledged, "[i]f nonresidents purchase [UIM] coverage, it does not need to comply with Minnesota law." *Id.* at 559. Moreover, the agent who issued the policy was aware, or should have been aware, that the insured was living and working in Minnesota for the foreseeable future when the policy was issued. *Id.* at 558, 562 & n.3. Thus, at the time the insurer issued its policy in *Schossow*, it arguably had reason to believe it needed to provide coverage consistent with Minnesota's statutory requirements. In contrast here, Richard did not become a resident of Minnesota until *after* the policy was issued in Wisconsin, and there is no suggestion Mid-Century became aware before the accident that Richard resided in Minnesota. These factual differences make reliance on *Schossow* here dubious.

Second, to the extent Toni urges us to apply *Schossow*'s interpretation of sections 65B.49 and 65B.50, subdiv. 1 to out-of-state policies issued to non-residents, Minnesota courts have generally rejected such an interpretation. The Minnesota

insureds in *Schossow* purchased UIM benefits from their insurer. *Id.* We do not find the distinction as meaningful as the court did in *Schossow.* Both the existence of a type of coverage and the calculation of benefits for such coverage are agreed-upon terms in a policy. We see no basis in the relevant statutes to conclude the Minnesota legislature meant to treat such terms in an out-of-state policy differently upon the insured moving to Minnesota.

Supreme Court has explained that it looks to subdivision 2 of section 65B.50, not subdivision 1, "in order to determine what 'security' must be afforded to nonresident insureds operating an insured vehicle in Minnesota." *Petty v. Allstate Ins. Co.*, 290 N.W.2d 763, 766 (Minn. 1980). Subdivision 2 requires every automobile liability insurance policy, "wherever issued," to include "basic economic loss benefit coverages and residual liability coverages required by sections 65B.41 to 65B.71, while the vehicle is in" Minnesota. § 65B.50, subdiv. 2. Notably, basic economic loss and residual liability requirements are found in section 65B.49, subdivisions 1 and 2. Thus, section 65B.50 only requires an out-of-state policy to include basic economic loss benefit coverage and residual liability coverages.

The Minnesota Court of Appeals has repeatedly reinforced such an interpretation, explaining that "[s]ince 1980, appellate courts have read both subdivisions of section 65B.50 together, and held that the 'security' referenced in subdivision 1 for nonresident policyholders refers *only* to the required coverage in subdivision 2, which expressly refers to 'every contract of liability insurance . . . wherever issued." *Friese v. Am. Family Mut. Ins. Co.*, No. A17-0908 2018 WL 576772, at *3 (Minn. Ct. App. Jan. 29, 2018) (emphasis added) (quoting *Petty*, 290 N.W.2d at 765–66); *accord Ziegelmann v. Nat'l Farmers Union Prop. & Cas. Cos.*, 686 N.W.2d 563, 567 (Minn. Ct. App. 2004); *Aguilar v. Tex. Farmers Ins. Co.*, 504 N.W.2d 791, 793 (Minn. Ct. App. 1993); *Hedin v. State Farm Mut. Auto. Ins. Co.*, 351 N.W.2d 407, 409 (Minn. Ct. App. 1984). Minnesota courts have consistently held that section 65B.50 does not require UIM coverage as set forth in section 65B.49, to nonresident insureds. *See Ziegelmann*, 686 N.W.2d at 567 ("This court has interpreted Minn. Stat. § 65B.50, subds. 1 and 2, to mean that under the no-fault act, insurers licensed to do business in Minnesota must provide nonresident insureds with basic-economic-loss and residual liability coverages, but are *not required to provide underinsured coverage.*") (emphasis added); *Aguilar*, 504 N.W.2d at 794 ("Anything in addition to the statutorily-mandated coverages, such as UIM coverage, is a matter of contract between the parties.").

This brings us back to *Cantu*, where the Minnesota Supreme Court refused to require an insurer to provide uninsured coverage to a Minnesota resident with an out-of-state policy issued before the insured relocated to Minnesota. The court's summary reversal necessarily embraces an interpretation of sections 65B.49 and 65B.50 that is consistent with the reasoning employed by the courts in *Friese*, *Ziegelmann*, *Aguilar*, and *Hedin*, and rejects the expansive interpretation suggested in *Schossow. See Cantu*, 535 N.W.2d at 292. That is, section 65B.49's requirements regarding uninsured and UIM coverage only apply to an out-of-state policy if it is renewed, delivered, issued for delivery, or executed in Minnesota. *Id.* Since our task is to predict how the Minnesota Supreme Court would decide the issue, we choose to follow the interpretation used in *Cantu*, which is consistent with plain language of the relevant statutes and Minnesota case law generally, over that suggested in *Schossow*.[6]

We therefore hold that since Mid-Century issued the policy to the Brills when they resided in Wisconsin and the policy was not renewed after Richard's move, section 65B.50 's add-on approach to calculating UIM coverage is not required. The plain language of the policy controls, which dictates a limits-less-paid approach to calculating UIM coverage.

---

[6]We decline Toni's invitation to certify the issue to the Minnesota Supreme Court. "[A]bsent a close question of state law or a lack of state guidance, a federal court should determine all issues before it." *Cty. of Ramsey v. MERSCORP Holdings, Inc.*, 776 F.3d 947, 951 (8th Cir. 2014) (alteration in original) (quoting *Anderson v. Hess Corp.*, 649 F.3d 891, 895 (8th Cir. 2011)). We do not view the issue to be such a close question, or there to be such a lack of state guidance, to justify us certifying the issue.

## IV. Conclusion

We affirm the district court's grant of summary judgment in favor of Mid-Century.

_____