**Jean E. BIGELOW, Respondent,**

v.

**Rev. Paul HALLORAN, As Personal Representative of the Estate of Ralph Mathias, Deceased, Appellant.**

**No. 51784.**

Supreme Court of Minnesota.

Dec. 11, 1981.

Michaels, Seeger, Rosenblad & Arnold, Ronald L. Seeger and John B. Arnold, Rochester, for appellant.

Baudler, Baudler & Maus and Bryan J. Baudler, Austin, for respondent.

OTIS, Justice.

Defendant appeals from an order of the trial court denying defendant's alternative motions for judgment notwithstanding the verdict or for a new trial. On appeal, defendant argues that Minnesota's survival statute, Minn.Stat. § 573.01 (1980), is applicable thus extinguishing plaintiff's cause of action for assault and battery because of the death of the tortfeasor, Ralph Mathias. The trial court held, under our decision in *Milkovich v. Saari*, 295 Minn. 155, 203 N.W.2d 408 (1973), that Iowa's survival statute, Iowa Code § 611.20, is applicable thus allowing the survival of plaintiff's cause of action. This appeal therefore presents a conflict of law issue.

The facts in this case are not in dispute. Plaintiff, Jean E. Bigelow, a widow with two minor children, was seriously injured when she was struck in the face and head by a shotgun blast fired by defendant's decedent, Ralph Mathias. Shortly thereafter Mathias took his own life. At the time of this tragedy, plaintiff was an Iowa resident, residing on her family farm in Mitchell County, Iowa. Several days after plaintiff had terminated an approximately one-year relationship with Ralph Mathias, he traveled to plaintiff's Iowa farm and concealed himself awaiting plaintiff's arrival. When she arrived he restrained her in her farmhouse and threatened her with a shot-

gun. Eventually plaintiff was able to make a phone call and the authorities learned of her situation. As the police were approaching plaintiff's farmhouse she attempted to flee to their safety. At this time she was shot by Ralph Mathias and he later shot himself.

■ The conflict of law in this case is between the survival statutes of Minnesota and Iowa. Minnesota's survival statute leaves intact the common law bar against intentional tort suits after the death of either party, see *Wild v. Rarig*, 302 Minn. 419, 234 N.W.2d 775 (1975), while Iowa's survival statute allows the survival of all causes of action in complete abrogation of the common law. In resolving this conflict we are guided by our decision in *Milkovich v. Saari*, 295 Minn. 155, 203 N.W.2d 408 (1973). There this court abandoned the "outmoded" lex-loci rule for resolving conflict of law issues and adopted the "more rational choice of law methodology" of Professor Leflar. *Id.* at 162, 203 N.W.2d at 412. As pointed out in *Milkovich*, only the last two elements of Professor Leflar's five-point methodology are relevant to tort cases. *Id.* at 161, 203 N.W.2d at 412; *accord, Schwartz v. Consolidated Freightways Corp. of Delaware*, 300 Minn. 487, 491, 221 N.W.2d 665, 668 (1974). These two considerations are 1) advancement of the forum's governmental interests, and 2) application of the better rule of law.

Professor Leflar's governmental interests test contemplates the application of forum factual contacts and forum policy considerations. *See Schwartz v. Consolidated Freightways Corp. of Delaware*, 300 Minn. 487, 491, 221 N.W.2d 665, 668 (1974). In this case, however, the governmental interests test proves to be inconclusive. First, there are significant factual contacts with both Iowa and Minnesota. In favor of applying Iowa law we note that defendant's decedent crossed into Iowa, made his way to plaintiff's Iowa residence, shotgunned plaintiff, then an Iowa resident, and killed himself in Iowa. On the other hand, in favor of applying Minnesota law, we note that plaintiff has significant contacts with Minnesota (she worked in Minnesota, met defendant's decedent in Minnesota, and currently resides in Minnesota), defendant's decedent was a Minnesota resident, and probate proceedings have begun in Minnesota.

Second, Minnesota has no overriding policy interest in foreclosing plaintiff's claim. We find no legitimate governmental interest in transferring the decedent's estate intact to his heirs to the exclusion of a seriously injured intentional tort victim. The law already provides protection to surviving spouses and children. *See* Minn. Stat. § 525.145 (1980). In addition, any delay in probate proceedings caused by an intentional tort suit is no different from delays resulting from negligence, strict liability, or contract actions, all of which survive the death of a party.

We next consider whether Minnesota or Iowa has the better rule of law. Minnesota's survival statute is apparently a remnant of the early common law when the cause of action for intentional tort was considered an adjunct to criminal punishment. *See* W. Prosser, *The Law of Torts* 898 (4th ed. 1971). Because of its punitive nature, the rationale for intentional tort did not survive the death of the tortfeasor as his death made further punishment impossible. If the victim died it was thought that the king, and not the victim's representatives, should seek redress. *Id.* The modern tort of assault and battery, however, is essentially compensatory, and not punitive, in nature and the rationale for the cause of action therefore survives death. We agree with Prosser's observation that "the modern trend is definitely toward the view that tort causes of action and liabilities are as fairly a part of the estate of either plaintiff or defendant as contract debts, and that the question is rather one of why a fortuitous event such as death should extinguish a valid action." *Id.* at 901.

In addition, this court has often said that it is in the interest of this state to see that tort victims are fully compensated. *See, e. g., Hague v. Allstate Ins. Co.*, 289 N.W.2d 43, 48 (Minn.1978), *aff'd*, 449 U.S. 302, 101

S.Ct. 633, 66 L.Ed.2d 521 (1981). Minnesota's statutory bar against intentional tort claims after the death of either party undermines this state interest. As Professor Leflar has said, "[t]he inclination of any reasonable court will be to prefer rules of law which make good socio-economic sense for the time when the court speaks, whether they be its own or another state's rules." R. Leflar, *Conflicts Law: More on Choice-Influencing Considerations,* 54 Cal.L.Rev. 1584, 1588 (1966). We agree with the trial court, therefore, that Professor Leflar's better rule of law analysis results in the application of Iowa's survival statute to this case.

■ Defendant finally argues that there was insufficient evidence to warrant a jury instruction on future loss of earning capacity. We conclude, however, that plaintiff established by a fair preponderance of evidence the extent to which future loss of earning capacity is reasonably certain to occur. *See Moteberg v. Johnson,* 297 Minn. 28, 36, 210 N.W.2d 27, 32 (1973). Plaintiff presented her own testimony and that of a medical expert establishing a permanent loss of eyesight to plaintiff's right eye. As she further testified, her injuries will affect her ability to return to her former work at the Mayo Clinic. This evidence was uncontroverted by defendant. Accordingly, there was sufficient evidence to prevent the jury from making "a purely speculative prognosis in assessing damages." *Mack v. McGrath,* 276 Minn. 419, 422, 150 N.W.2d 681, 683 (1967).

We hold that the trial court was correct both in applying Iowa's survival statute to this case, and in instructing the jury on future loss of earning capacity. The judgment of the trial court is therefore affirmed.

SHERAN, C. J., took no part in the consideration or decision of this case.