SCHWICKERT, INC.,
Respondent/Cross–
Appellant,

v.

WINNEBAGO SENIORS, LTD., a Minnesota Limited Partnership, Minnesota Housing Finance Agency, and Thies & Talle Enterprises, Inc., Respondents/Cross–Appellants,

v.

11,111, Inc., d/b/a/ Energy Conservation Consultants, Inc., Respondent/Cross–Appellant,

v.

AMCO Insurance Company, Inc., Appellant/Cross–Respondent.

Nos. C8–02–1972, C4–02–2083.

Supreme Court of Minnesota.

May 27, 2004.

Jon A. Hanson, E. Curtis Roeder, Candy B. Olson, Hanson, Lulic & Krall, Minneapolis, MN, for Appellant/Cross Respondent AMCO.

Scott V. Kelly, Aaron J. Glade, Farrish Johnson Law Office, Mankato, MN, for Respondent/Cross–Appellant Schwickert and ECC.

Eric Magnuson, Richard J. Nygaard, Paula Duggan Vraa, Rider Bennett, LLP, Minneapolis, MN, for Respondent/Cross–Appellant Winnebago Seniors, Ltd., MHFA and Thies & Talle.

## OPINION

HANSON, Justice.

By a certified question contained in an order denying a property insurer's motion for summary judgment, we are asked whether "the principles of *Schmidt v. Clothier*, 338 N.W.2d 256 (Minn.1983) apply in a first-party property dispute outside of the personal injury context." [*Schmidt* provides a mechanism for an uninsured/underinsured motorist carrier to preserve its subrogation rights where the tortfeasor makes a settlement offer to the insured]. Because *Schmidt* was fundamentally grounded on policies of Minnesota's No–Fault Act that are not present in first-party property insurance disputes, and issues concerning the preservation of subrogation rights in first-party property insurance can be determined on the basis of recognized contract principles, we decline to extend *Schmidt* to first-party property insurance. We reverse the decision of the court of appeals that *Schmidt* does apply, affirm on other grounds the district court's order denying the insurer's motion for summary judgment, and reinstate the district court's Rule 68 judgment determining the claims of the insured against the tortfeasor.

The Garden Court Apartments in Winnebago, Minnesota, were damaged during heavy rainfall when the roof, which was being repaired, was left uncovered. The owners of the building, respondents Winnebago Seniors, Ltd., the Minnesota Housing and Finance Agency (MHFA) and Thies & Talle Enterprises, Inc. (collectively, "Owner") withheld payment to the roofing contractor, respondent Schwickert, Inc., and the roofing consultant, respondent 11,111 Inc., d/b/a/ Energy Conservation Consultants (ECC). The Owner also filed a claim for water damage and business interruption with its property insurer, appellant AMCO Insurance Company, Inc. (AMCO). Eight months later, AMCO informed Owner that it had completed its investigation and it denied coverage.

When Schwickert brought a mechanic's lien action for payment, Owner counterclaimed for negligence and breach of contract and warranties; brought a third-party action against ECC for breach of contract, negligent supervision and negligent design; and also brought a third-party action against AMCO for the insured loss.[1] AMCO brought two motions

---

1. Owner's claim against AMCO was inappropriately styled as a third-party complaint because, under Minn. R. Civ. P. 14.01, a defendant may serve a third-party complaint against a person "who is or may be liable to the third-party plaintiff for all or part of the plaintiff's claim against the third-party plaintiff" and Owner's claim against AMCO alleges damages beyond the amounts claimed by Schwickert, including indemnification for architects, engineers, and attorney fees, business interruption losses, and environmental

for summary judgment against Owner on coverage defenses, the first on the grounds that Owner's claims were subject to policy exclusions, and the district court denied both motions, in whole or in part, but did not certify the questions for immediate appeal. *See* Minn. R. Civ.App. P. 103.03, subd. (i). Those orders are not before us on this appeal.

Schwickert and ECC made a Rule 68 offer of judgment to Owner for $800,000, an amount less than the liability limits of their respective policies. Owner gave AMCO oral notice of its intent to accept the offer and demanded that AMCO substitute its payment of $800,000 if it wished to preserve its subrogation rights. Owner apparently was attempting to follow the procedures outlined in *Schmidt v. Clothier,* 338 N.W.2d 256 (Minn.1983), for resolving the subrogation rights of an uninsured/underinsured motorist insurer when the insured has received a settlement offer from the tortfeasor. AMCO responded in writing, objecting to the settlement and refusing to substitute its payment of $800,000. AMCO argued that the procedures outlined in *Schmidt* did not apply; that if *Schmidt* did apply, Owner had not given adequate notice; and that acceptance of the settlement by Owner would impair AMCO's subrogation rights and "AMCO will be entitled to a dismissal with prejudice." Owner accepted the Rule 68 offer of judgment and judgment was entered for Owner against Schwickert and ECC for $800,000.

AMCO then moved for summary judgment against Owner on grounds that Owner had breached its obligation to protect AMCO's subrogation rights. The district court denied AMCO's motion for summary judgment against Owner, concluding that (1) the principles in *Schmidt* do apply; (2) AMCO had sufficient notice of the offer of judgment; (3) AMCO was given the opportunity to substitute its draft for $800,000, but it chose not to do so and did not request additional time to consider the offer; (4) AMCO waived its subrogation rights against ECC and Schwickert by failing to substitute its draft; and (5) Owner's acceptance of the offer of judgment did not release AMCO from its contractual obligations to Owner. The district court certified as important and doubtful the question of whether the principles of *Schmidt* apply in a first-party property insurance dispute.

The district court also (1) granted motions by Schwickert and ECC to dismiss AMCO's subrogation claims against them; (2) awarded Owner costs and disbursements in the amount of $34,910.44 against Schwickert and ECC on the $800,000 judgment; (3) denied Owner's claims for attorney fees and prejudgment interest against Schwickert and ECC; and (4) ordered entry of final partial judgment under Minn. R. Civ. P. 54.02 to facilitate an immediate appeal.

AMCO appealed from the denial of its summary judgment motion against Owner, the grant of summary judgment dismissing its claims against Schwickert and ECC and the resulting partial judgments. Owner sought review of the denial of its motion for attorney fees and prejudgment interest. The court of appeals affirmed in part, reversed in part and remanded, holding that the principles of *Schmidt* do apply to first-party property insurance disputes but

hazard abatement, construction, and other construction and repair/replacement costs and expenses. But AMCO did not object to the assertion of these claims by third-party complaint. Accordingly, we will proceed under the assumption that all issues concerning Owner's claims against AMCO under the property insurance policy have been appropriately joined in this action.

that Owner had failed to demonstrate that it gave adequate notice of intent to settle under *Schmidt*. The court set aside the Rule 68 judgment and the dismissal of AMCO's subrogation claims against Schwickert and ECC and remanded all claims for trial. While acknowledging that it need not reach the issue, the court also held that Owner was not entitled to attorney fees or prejudgment interest on the Rule 68 judgment. *See Schwickert v. Winnebago*, 661 N.W.2d 680, 691 (Minn. App.2003).

## I.

■ The district court certified the question of the applicability of *Schmidt* to Owner's dispute with AMCO under its first-party property insurance. A certified question is a question of law which this court reviews de novo. *Conwed Corp. v. Union Carbide Chems. & Plastics Co.*, 634 N.W.2d 401, 406 (Minn.2001); *Dohney v. Allstate Ins. Co.*, 632 N.W.2d 598, 600 (Minn.2001). Construction of an insurance contract is also a legal issue subject to de novo review. *Dohney*, 632 N.W.2d at 600.

The question of whether *Schmidt* applies to first-party property insurance disputes, outside of the context of the No–Fault Act, is a matter of first impression. To date, *Schmidt* has only been applied to cases involving uninsured and underinsured motorist insurance claims arising under the No–Fault Act. *See, e.g., Malmin v. Minn. Mut. Fire Cas. Co.*, 552 N.W.2d 723, 724 (Minn.1996) (underinsured motorists); *Employers Mut. Cos. v. Nordstrom*, 495 N.W.2d 855, 855–56 (Minn.1993) (same).

■ In *Schmidt*, we considered the dilemma that is presented where the best settlement available to an insured with the tortfeasor is less than the liability limits of the tortfeasor's policy but the insured's policy contains an "exhaustion clause," whereby underinsured motorist coverage is only available after the limits of the tortfeasor's liability policy are exhausted. We held that "exhaustion clauses are void as against the policies of the no-fault act" and the "insured may recover underinsurance benefits where the total damages sustained (as determined by either arbitration or judgment) exceed the limits of the tortfeasor's liability policy even where the insured settles with the tortfeasor for less than the liability limits." 338 N.W.2d at 261. With respect to the insurer's potential subrogation claim against the tortfeasor, we adopted a procedure that balanced the right of the insurer to preserve its subrogation claim with the right of the insured to obtain full compensation. Giving more weight to the insured's right to full compensation, we held that if an insured gives the insurer 30–days notice of a tentative settlement agreement with the tortfeasor for an amount at or below the tortfeasor's liability limits, the insurer must either pay the insured an amount equal to the tentative settlement, and thus preserve its subrogation rights, or waive its subrogation rights. *Id.* at 263.

Owner asks us to extend this procedure for resolving an insurer's subrogation rights to first-party property insurance disputes. *Schmidt*, however, was grounded on the statutory policy of providing full compensation to injured persons under the No–Fault Act. We relied upon that policy to declare the insurer's exhaustion clause void and to give greater weight to the insured's right to compensation than to the insurer's right to subrogation.

First-party property insurance claims, on the other hand, are not influenced by the public policies that underlie the No–Fault Act and are governed solely by the contract terms agreed to by the parties. Because there are no public policy considerations that would allow us to override

the terms of the policy, we decline to add to or alter those terms by overlaying the *Schmidt* procedures on them. Accordingly, we answer the certified question in the negative.

## II.

Owner argues that if *Schmidt* does not apply, then we should conclude that AMCO's continued denial of coverage, from July 1999 until the Rule 68 offer of judgment was made in May 2002, was a material breach that relieved Owner of any obligation to protect AMCO's subrogation rights. The Owner's obligation to protect AMCO's subrogation rights is described in the policy as follows:

**Transfer of rights of recovery against others to us**

1. If any person or organization to or for whom we make payment under this policy has rights to recover damages from another, those rights are transferred to us to the extent of our payment.

2. If we make a payment under this policy and the person or organization to or for whom payment is made recovers damages from another, that person or organization shall hold, in trust for us, the proceeds of the recovery and reimburse us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair them.

AMCO argues that, by accepting the Rule 68 offer of judgment by the tortfeasors without AMCO's consent, Owner breached its obligations to do "everything necessary to secure [AMCO's] rights" and to do "nothing after loss to impair them."

The district court and the court of appeals did not consider this issue except in the context of the *Schmidt* procedures. As noted earlier, the district court did consider AMCO's defenses to coverage in two earlier orders that denied AMCO's first summary judgment motion based on policy exclusions and its second motion based on policy time limitations for suit. But the court did not certify those questions for immediate appeal and they are not before us. Thus, we will assume for our discussion that AMCO's denial of coverage was erroneous, but recognize that the district court's decision on that issue is not ripe for review.

In *Home Ins. Co. v. Nat'l Union Fire Ins. of Pittsburgh*, we held that a third-party liability insurer's erroneous denial of coverage and failure to defend the insured was a breach of contract that suspended the obligation of the insured to provide a notice that was otherwise required by the policy. 658 N.W.2d 522, 534 (Minn.2003) (citing *Domtar, Inc. v. Niagara Fire Ins. Co.*, 563 N.W.2d 724, 740 (Minn.1997), which allowed recovery of attorney fees against a comprehensive general liability carrier that had breached the agreement by denying coverage, and *Space Center, Inc. v. 451 Corp.*, 298 N.W.2d 443, 451 (Minn.1980), stating the general proposition that "a repudiating party cannot set up the other party's subsequent nonperformance or a breach to avoid liability for its own prior total breach."). This conclusion is consistent with the recognized contract principle announced in the Restatement (Second) of Contracts § 237 (1981), that the remaining duties of one party to a contract are conditioned on there being no previous "uncured material failure" by the other party.

Some jurisdictions have applied that principle to determine that the erroneous denial of coverage in third-party liability insurance relieves the insured of the obligation to protect the insurer's subrogation rights and authorizes the insured to make a settlement with the tortfeasor without

the consent of the insurer. *See, e.g., Youell v. Grimes,* 217 F.Supp.2d 1167, 1175 (D.Kan.2002) (officer's and director's liability insurance); *Eureka Investment Corp. v. Chicago Title Ins. Co.,* 530 F.Supp. 1110, 1118–19 (D.D.C.1982) (title insurance). *See also Great Divide Ins. Co. v. Carpenter,* 79 P.3d 599, 609–10 (Alaska 2003) (holding that a settlement agreement by the insured with the tortfeasor without the consent of the insurer did not relieve the insurer of its obligations under a commercial general liability policy even where the insurer had provided a defense but materially breached the policy by unreasonably refusing to consent to the settlement).

An even greater number of jurisdictions have reached this same conclusion when an insurer makes an erroneous denial of uninsured or underinsured motorist coverage.[2] *See Fisher v. USAA Cas. Ins. Co.,* 973 F.2d 1103, 1107 (3d Cir.1992); *Havanich v. Safeco Ins. Co. of America,* 557 F.2d 948, 952 (2d Cir.1977); *Stephens v. State Farm Mut. Auto. Ins. Co.,* 508 F.2d 1363, 1366 (5th Cir.1975); *Calhoun v. State Farm Mut. Auto. Ins. Co.,* 254 Cal.App.2d 407, 411–12, 62 Cal.Rptr. 177 (1967); *Andeen v. Country Mut. Ins. Co.,* 70 Ill.App.2d 357, 217 N.E.2d 814, 817 (1966); *Sexton v. Cont'l Cas. Co.,* 816 P.2d 1135 (Okla.1991); *Childs v. Allstate Ins. Co.,* 237 S.C. 455, 117 S.E.2d 867, 871 (1961).

In *Stephens,* the federal court provided a persuasive rationale for the conclusion that an uninsured motorist insurer that denies coverage has waived the policy provision requiring the insurer's consent to any settlement between the insurer's and a tortfeasor:

> [C]laimant should not be required to approach his insurer, hat in hand, and request consent to settle with another when he has already been told, in essence, that the insurer is not concerned, and he is to go his way. It is difficult to see why an insurer should be allowed, on the one hand, to deny liability and thus, in the eyes of the insured, breach his contract and, at the same time, on the other hand, be allowed to insist that the insured honor all his contractual commitments. When the denied liability does not, in fact, exist, no harm can be done the insurer by the insured's settlement with a third party. When the denied liability does exist (as may be later adjudicated), admittedly the subrogation rights of the insurer could be compromised by settlement. However, in the case of existent, denied liability, the denial is a breach of contract on the part of the insurer and its breach should, by rights, relieve the insured of the punitive effects of his failure to comply with consent provisions of the insurance policy.

508 F.2d at 1366. *See also* 16 Lee R. Russ, *Couch on Insurance,* 224.148 (3d ed. 2000) ("[w]here an insurer denies liability on a policy, it is estopped from thereafter claiming that it is released when the insured settled with the wrongdoer, or that the insured breached the policy's subrogation provision, by impairing its subrogation rights, or extinguishing its subrogation rights") and 224.152 ("When by its own

---

**2.** There is some confusion as to whether uninsured and underinsured coverage should be regarded as first-party or third-party insurance. One treatise states: "You may accurately regard all forms of insurance (except liability insurance and perhaps uninsured motorist coverage) to be first-party insurance." 1 Eric Mills Holmes, *Appelman on Insurance* § 3.2 (2d ed. 1996). We have consistently viewed uninsured and underinsured coverage as first-party insurance. *See, e.g., Kelly v. State Farm Mut. Auto. Ins. Co.,* 666 N.W.2d 328, 330–31 (Minn.2003); *Petrich v. Hartford Fire Ins. Co.,* 427 N.W.2d 244, 245–46 (Minn. 1988); *Myers v. State Farm Mut. Auto. Ins. Co.,* 336 N.W.2d 288, 291 (Minn.1983).

conduct an insurer places the insured at such a disadvantage that the insured must proceed against the tortfeasor in order to save himself or herself and does so, the insurer thereby waives its right to subrogation. * * * An insurer's failure to pay all of an insured's claims resulted in waiver of the insurer's claim that the insureds breached the subrogation clause by suing the tortfeasor and obtaining satisfaction of judgment.").

Finally, courts in several other jurisdictions have likewise concluded that the erroneous denial of coverage for other first-party insurance likewise relieves the insured from the obligation to protect the insurer's subrogation rights and authorizes the insured to reach a settlement with the tortfeasor without the consent of the insurer. *See, e.g., Russell Gasket Co. v. Phoenix of Hartford Ins. Co.*, 512 F.2d 205, 209 (6th Cir.1975) (holding that first-party employee dishonesty insurer's denial of coverage was a waiver of the claim that insured's pursuit of the tortfeasor violated the insurer's subrogation rights); *Nat'l Mut. Ins. Co. v. Fincher*, 428 N.E.2d 1386, 1391 (Ind.Ct.App.1981) (stating that first-party medical and disability insurer, who arbitrarily denied coverage, waived any claim that the insured's settlement with the tortfeasors prejudiced the insurer's subrogation rights); *Community Title Co. v. Safeco Ins. Co.*, 795 S.W.2d 453, 462 (Mo.Ct.App.1990) (stating that once first-party fire insurer denied all coverage, insurer waived the contractual provisions requiring its consent to settle with the responsible parties even though such settlement might impair potential subrogation rights).

■ We are persuaded that these principles apply here. Thus, if AMCO's denial of coverage was erroneous, such denial will have relieved Owner of the obligation to protect AMCO's subrogation rights and will have authorized Owner to accept the Rule 68 offer of judgment without the consent of AMCO. In so concluding, we are mindful that an insurer such as AMCO must be allowed a reasonable time to investigate the claims of its insured before it can be found to have materially breached the contract by the denial of coverage. But the present facts show that AMCO had ample time to investigate Owner's claims and even to have its coverage defenses determined by a declaratory judgment action if it did not want to be confronted with the prospect of a settlement between Owner and the tortfeasors.[3]

Accordingly, we conclude that Owner's acceptance of the Rule 68 offer of judgment was not a breach of its obligation to protect AMCO's subrogation rights and we affirm the district court's denial of

---

**3.** Owner raises the additional argument that AMCO has no subrogation rights because, under the policy, its rights only ripen when it has made "payment." This requirement of payment is consistent with the common law principles of subrogation. *See, e.g., American Family Mut. Ins. Co. v. Baumann*, 459 N.W.2d 923, 925 (Minn.1990); *Great N. Oil Co. v. St. Paul Fire Marine Ins. Co.*, 291 Minn. 97, 99, 189 N.W.2d 404, 406 (1971). Of course, it could be argued that an insurer has an inchoate right to subrogation before payment and, as noted above, must be allowed sufficient time to investigate the insured's claim before nonpayment may be used as a basis to defeat its subrogation rights. But given that reasonable time, the fact of nonpayment becomes relevant at the time that the insured is presented with an offer of settlement by the tortfeasor. Here, the only payment AMCO made prior to the Rule 68 offer was the one-time payment of $3,473 to Brennan Construction for emergency services. This minor payment would not eliminate AMCO's breach of contract or prevent Owner from reaching settlement with the tortfeasor. Whether this payment should be offset against Owner's remaining claims in the policy will need to be addressed on remand to the district court.

AMCO's third motion for summary judgment against Owner.

## III.

■ AMCO argues that, notwithstanding the settlement and the release by Owner of Schwickert and ECC, AMCO's subrogation claims against Schwickert and ECC should not have been dismissed because, if AMCO is ultimately required to pay for losses under its policy, it should be permitted to seek subrogation from Schwickert and ECC. But, as subrogee, AMCO is entitled to no greater rights against Schwickert and ECC than those that Owner possesses at the time AMCO asserts the claim. AMCO merely "steps in the shoes" of Owner. *Employers Mut. Cas. Co. v. A.C.C.T., Inc.*, 580 N.W.2d 490, 493 (Minn.1998). Generally, where an insured has provided a full release to the tortfeasor before the insured makes payment under the policy, the insured's right of subrogation is eliminated. *Great N. Oil Co. v. St. Paul Fire Marine Ins. Co.*, 291 Minn. at 99–100, 189 N.W.2d at 406–07.

As discussed above, if AMCO erroneously denied coverage, and persisted in that denial through months of litigation by Owner with the tortfeasor, AMCO's denial relieved Owner of any obligation to protect AMCO's subrogation interest and authorized Owner to make a settlement that eliminated AMCO's subrogation rights. Again, we do not decide whether AMCO's denial of coverage was erroneous. If it is ultimately determined that it was not erroneous, AMCO will have no liability to Owner and no need for subrogation. If it is ultimately determined that AMCO's denial was erroneous, then AMCO will have waived its subrogation interest. Either way, dismissal of AMCO's claims against Schwickert and ECC is appropriate.

Accordingly, we reverse the court of appeals decision to vacate the Rule 68 judgment. We reinstate that judgment and affirm the district court's grant of summary judgment dismissing AMCO's claims against Schwickert and ECC.

## IV.

Owner cross-appealed to obtain review of its claim that attorney fees and prejudgment interest should have been awarded in addition to the $800,000 lump sum contained in the Rule 68 offer.

*Attorney Fees*

■ Recovery of attorney fees must be based on either a statute or a contract. *See American Standard Ins. Co. v. Le*, 551 N.W.2d 923, 927 (Minn.1996). Because no statutory basis exists for recovering attorney fees in this case, the only basis for recovery is under the terms of the Owner's contract with Schwickert.

■ Rule 68 states that a party may make an offer of judgment for "a specified sum of money, with costs and disbursements then accrued," but it does not define "costs and disbursements." In *Collins v. Minnesota School of Business, Inc.*, we allowed recovery of statutory attorney fees when the Rule 68 offer stated a lump sum of $200,000, "together with any costs and disbursements allowed by the District Court." 655 N.W.2d 320, 322 (Minn.2003). Some of the claims that gave rise to the offer provided for statutory attorney fees and some did not. *Id.* at 327. We concluded that the drafters of the offer must "clearly express that attorney fees are included in the lump sum offer; otherwise, the offeree, if the underlying statute allows it, is entitled to recover attorney fees." *Id.* at 330. Under the facts of that case, we concluded that statutory attorney fees were recoverable as "costs and disbursements" in addition to the lump sum amount. *Id.* at 329.

Here, the Rule 68 offer does not explicitly offer to add costs and disbursements to the lump sum amount. It simply offers "the amount of Eight Hundred Thousand Dollars ($800,000.00) and that judgment may be entered on that amount, if timely accepted, within ten (10) days after service of the offer." The district court denied recovery of attorney fees on two grounds: first, because they were not mentioned in the offer and, second, because the Rule 68 offer "merges any prior contractual obligations Schwickert may have had, including the attorney fees provision in the Schwickert/Owner contract." Schwickert relies on the contractual argument to distinguish *Collins*, where recovery of the fees was allowed by statute not by contract.

We interpret Schwickert's Rule 68 offer to imply that costs and disbursements will be allowed in addition to the lump sum amount. Such implication is necessary to comply with Rule 68, which only permits an offer to "pay * * * a specified sum of money, with costs and disbursements then accrued." But we agree with Schwickert that the most reasonable interpretation of its Rule 68 offer is that it was intended to resolve all claims under the contract, including contractual claims for attorney fees. Although we continue to urge all drafters of Rule 68 offers to avoid these disputes by stating whether the offer includes or excludes the payment of attorney fees in addition to the lump sum amount, we interpret this Rule 68 offer as one to resolve all claims for breach of contract and to implicitly include the claim for breach of the contractual provision for attorney fees as part of the lump sum.

*Prejudgment Interest*

The right to recovery of prejudgment interest, on the other hand, is statutory, not contractual. Prejudgment interest is governed by Minn.Stat. § 549.09, subd. 1

(2002), and is not affected by Rule 68. *See* Minn. R. Civ. P. 68 (2003) advisory committee notes ("Minn.Stat. § 549.09, subd. 1(1982), as amended by Minn. Laws 1983, ch. 399 (effective July 1, 1984), provides for recovery of prejudgment interest. Rule 68 does not affect the operation of that statute."). Minn.Stat. § 549.09 provides, "when a judgment or award is for the recovery of money * * * interest from the time of the verdict, award, or report until judgment is finally entered *shall* be computed by the court administrator." Minn. Stat. § 549.09, subd. 1 (2002) (emphasis added).

■■■■■ Owner sought recovery of prejudgment interest from both Schwickert and ECC. The district court denied recovery of prejudgment interest on the grounds that the Rule 68 offer did not state that it included prejudgment interest in addition to the lump sum amount offered. The court of appeals affirmed, holding that prejudgment interest was, in any event, not allowable because it was not "readily ascertainable by computation." *Schwickert*, 661 N.W.2d at 690. The prejudgment interest statute does not require that the damages be readily ascertainable. *See, e.g., Summit Court, Inc. v. Northern States Power Co.*, 354 N.W.2d 13, 16 (Minn.1984). Thus, the only question is whether the Rule 68 offer should be interpreted as including prejudgment interest in the lump sum. Because prejudgment interest is statutory, not contractual, the rule of construction followed in *Collins* seems most applicable. The failure of the Rule 68 offer to expressly include prejudgment interest in the lump sum offered means that prejudgment interest is separately recoverable against Schwickert and ECC as a cost and disbursement in addition to the lump sum.

In summary, we (1) reverse the court of appeals decision that *Schmidt* applies and

answer the certified question in the negative; (2) affirm the district court's denial of AMCO's motion for summary judgment against Owner; (3) reverse the court of appeals decision to vacate the Rule 68 judgment and affirm the district court's grant of summary judgment dismissing AMCO's claims against Schwickert and ECC; and (4) affirm the denial of Owner's claim for attorney fees against Schwickert, but reverse the denial of Owner's claims for prejudgment interest against Schwickert and ECC. The matter is remanded for determination of Owner's prejudgment interest against Schwickert and ECC and for determination of Owner's policy claims against AMCO. As to the latter, we do not decide whether AMCO's denial of coverage was erroneous because that issue is not before us. Likewise, we do not decide what offset, if any, should be made for the small amount paid by AMCO for emergency services or the amounts recovered by Owner from Schwickert and ECC.

Affirmed in part, reversed in part and remanded.