Mark O. ZIEGELMANN,
et al., Respondents,

v.

NATIONAL FARMERS UNION
PROPERTY AND CASUALTY
COMPANIES, Appellant.

No. A04–412.

Court of Appeals of Minnesota.

Sept. 21, 2004.

Charles T. Hvass, Jr., Hvass, Weisman King, Chartered, Minneapolis, MN, for respondents.

Steven L. Marquart, Cahill Marquart, P.A., Moorhead, MN, for appellant.

Considered and decided by SCHUMACHER, Presiding Judge; ANDERSON, Judge; and HALBROOKS, Judge.

## OPINION

HALBROOKS, Judge.

A North Dakota resident injured in a motor-vehicle accident in Minnesota settled the underlying tort case for 90% of the tortfeasor's liability-coverage limits. The North Dakota resident then sought to recover underinsured motorist (UIM) benefits from his own insurer. The UIM insurer denied benefits on the ground that the policy terms required exhaustion of a tortfeasor's liability limits and moved for summary judgment. The district court denied the motion for summary judgment but, upon insurer's request, certified to this court the question of whether the principles set forth in *Schmidt v. Clothier*, 338 N.W.2d 256 (Minn.1983), apply to nonresident UIM coverage. We answer the district court's question in the negative.

## FACTS

Respondent Mark O. Ziegelmann is a North Dakota resident who was injured in January 1998 in a motor-vehicle accident that occurred in Minnesota. At the time, Ziegelmann was a passenger in his truck, which was driven by his brother, Terry

Ziegelmann. The truck collided with a vehicle driven by David Pearce.

Pearce was insured under a policy with Allstate with liability-coverage limits of $50,000. Ziegelmann's coverage on his North Dakota vehicles was with appellant National Farmers Union Property and Casualty Companies (National Farmers).

The policy included underinsured-motorist (UIM) coverage and an exhaustion-of-liability clause:

> With regard to . . . an underinsured motor vehicle, we will make payment provided . . . [t]he limits of all bodily injury liability policies and bonds that apply have been exhausted by payment of settlements or judgments, or such limits where the remaining part of them have been offered to the insured person in writing.

This clause is consistent with North Dakota law, which states that UIM coverage does not apply "[u]ntil the limits of all bodily injury liability policies and bonds that apply have been exhausted." N.D. Cent.Code § 26.1–40–15.6 (2003).

In November 2002, Ziegelmann's counsel wrote National Farmers, explaining that Ziegelmann had been offered a settlement in the amount of $45,000 from the $50,000 limit for bodily injury under Pearce's insurance policy with Allstate. The letter states, "I am writing to you pursuant to the procedure outlined in *Schmidt v. Clothier* in order to preserve any underinsured motorist benefits that might be available to Mark Ziegelmann in the future." 338 N.W.2d 256 (Minn.1983). National Farmers responded by letter dated December 3, 2002, writing:

> At this time, it is not our intention to substitute the draft on this claim. We will allow Mr. Ziegelmann to sign any releases deemed necessary to acquire the settlement money.

However, it is our opinion that North Dakota Underinsured Motorist Law would apply on this claim. Mr. Ziegelmann is a resident of North Dakota. His vehicle is primarily garaged in North Dakota and the contract for Underinsured Motorist Coverage was entered with National Farmers Union in the state of North Dakota. North Dakota law prescribes that the entire amount of the underlying insurance must be acquired in order for the insured to qualify for an underinsured motorist claim.

After this exchange, Ziegelmann settled with Allstate for $45,000 and commenced this litigation in Minnesota to recover UIM benefits from National Farmers. For the purposes of this appeal, the parties assume that Ziegelmann's damages exceed $50,000.

National Farmers moved for summary judgment, arguing that under Minn.Stat. § 65B.50, subds. 1, 2 (2002), National Farmers is not required to provide UIM coverage to a nonresident who is injured in an accident in Minnesota. The relevant statutory provisions state:

> Subdivision 1. Every insurer licensed to write motor vehicle accident reparation and liability insurance in this state shall, on or before January 1, 1975, or as a condition to such licensing, file with the commissioner or thereafter maintain a written certification that it will afford at least the minimum security provided by section 65B.49 to all policyholders, *except that in the case of nonresident policyholders it need only certify that security is provided with respect to accidents occurring in this state.*

> Subd. 2. Notwithstanding any contrary provision in it, *every contract of liability insurance for injury,* wherever issued, covering obligations arising from ownership, maintenance, or use of a mo-

tor vehicle, except a contract which provides coverage only for liability in excess of required minimum tort liability coverages, includes basic economic loss benefit coverages and residual liability coverages required by sections 65B.41 to 65B.71, while the vehicle is in this state, and *qualifies as security covering the vehicle.*

Minn.Stat. § 65B.50 (2002) (emphasis added).

National Farmers contends that if a nonresident has UIM coverage, it need not comply with Minnesota law, and Minnesota courts may not reform the out-of-state contract to comply with Minnesota law. Ziegelmann argues that the parties used a valid *Schmidt* procedure to achieve a fair outcome of the case, and National Farmers should, therefore, be bound by that agreement.

The district court focused on whether National Farmers "is freed from any obligation to insure the risk it underwrote by [Ziegelmann's] use of the *Schmidt v. Clothier* agreement." The court noted that under *Schmidt,* the exhaustion provision of Ziegelmann's UIM policy would be void, whereas under North Dakota law, the exhaustion provision is valid. The court then considered the five choice-influencing factors applicable to a conflicts-of-law situation and concluded that Minnesota law should be applied. As a result, the district court denied National Farmers' motion for summary judgment.

At National Farmers' request, the district court certified as important and doubtful the question of whether "a foreign insurance company licensed in Minnesota that issued an underinsured motorist coverage policy that required exhaustion of liability pursuant to another state's statute to a non-resident injured in an accident in Minnesota be bound by a properly executed *Schmidt v. Clothier* agreement?"

## ISSUES

I. Are the principles set forth in *Schmidt v. Clothier,* 338 N.W.2d 256 (Minn.1983), applicable to non-resident underinsured-motorist coverage?

II. Can an insurer be bound by a non-resident insured's use of the procedure set forth in the *Schmidt* opinion?

## ANALYSIS

### I.

A certified question is a question of law, which this court reviews de novo. *Conwed Corp. v. Union Carbide Chems. & Plastics Co.,* 634 N.W.2d 401, 406 (Minn. 2001). The underlying issues here involve statutory interpretation and interpretation of insurance contracts, both of which are legal issues, which we review de novo. *Dohney v. Allstate Ins. Co.,* 632 N.W.2d 598, 600 (Minn.2001).

In *Schmidt v. Clothier,* the Minnesota Supreme Court resolved the dilemma presented when an insured's UIM policy contains an exhaustion clause but the best settlement available with the tortfeasor is less than the liability limits of the tortfeasor's policy. 338 N.W.2d 256 (Minn.1983). The court held that exhaustion clauses are void as against the policies of Minnesota's no-fault act. *Id.* at 261. The court then created a procedure that balanced the right of an insurer to preserve its subrogation claim with the elimination of exhaustion clauses. *Id.* at 260–63 (insured must give insurer written notice of tentative settlement agreement, after which the insurer has 30 days to either acquiesce in settlement and lose its subrogation right or substitute its draft for the tortfeasor's ten-

dered draft and protect its subrogation right).

Minnesota's no-fault act is codified under Minn.Stat. §§ 65B.41–.71 (2002). This court has interpreted Minn.Stat. § 65B.50, subds. 1 and 2, to mean that under the no-fault act, insurers licensed to do business in Minnesota must provide nonresident insureds with basic-economic-loss and residual-liability coverages, but are not required to provide UIM coverage. *Warthan v. Am. Family Mut. Ins. Co.*, 592 N.W.2d 136, 139 (Minn.App.1999), *review denied* (Minn. July 28, 1999).

In *Warthan,* this court was asked by a nonresident insured, injured in an accident in Minnesota, to reform the insured's out-of-state UIM policy to comport with the calculation of a UIM insurer's maximum liability amount as provided under Minnesota's no-fault act. We declined, holding that because insurers of nonresidents are not required to furnish UIM coverage, "if nonresidents have such coverage it need not comply with Minnesota law." *Id.; see also Aguilar v. Texas Farmers Ins. Co.,* 504 N.W.2d 791, 794 (Minn.App.1993) (UIM insurer not required to reform nonresident insured's UIM policy to meet the "add on" benefits required under Minnesota's no-fault act).

 The principles of *Schmidt* are limited to those claims that arise under the Minnesota no-fault act. *Schwickert, Inc. v. Winnebago Seniors, Ltd.,* 680 N.W.2d 79, 81 (Minn.2004). Because nonresident UIM coverage does not arise under the no-fault act, *Warthan,* 592 N.W.2d at 139, we conclude that the *Schmidt* principles do not apply to Ziegelmann's action to recover UIM benefits under his policy.

## II.

Ziegelmann contends that because National Farmers responded to the *Schmidt* notice, it should be held to that "agree-ment." The district court seemed to concur with this framing of the issue, stating that the question before it was "whether [National Farmers] is freed from any obligation to insure the risk it underwrote by plaintiff's use of the *Schmidt v. Clothier* agreement." We disagree.

Here, Ziegelmann's counsel gave National Farmers written notice of a tentative settlement agreement with the tort-feasor, stating that counsel was writing pursuant to the procedure outlined in *Schmidt.* National Farmers responded, stating that it would not substitute its draft, that Ziegelmann could "sign any releases deemed necessary to acquire the settlement money," and that it was of the opinion that North Dakota law would apply to Ziegelmann's UIM claim, which "prescribes that the entire amount of the underlying insurance must be acquired in order for the insured to qualify for a[n][UIM] claim."

 As previously discussed, the procedure set out in *Schmidt* is a course of action that occurs in UIM situations arising under the no-fault act, under which exhaustion clauses have been eliminated. Because the principles of *Schmidt* do not apply to a nonresident's UIM coverage, an insurer cannot be bound by a nonresident insured's use of the *Schmidt* notice procedure. And even if a nonresident insurer could be bound by agreement between the parties, we note that there was no such agreement in this case. By stating that it was National Farmers' opinion that North Dakota law applied to Ziegelmann's claim, National Farmers did not assent to the use of the *Schmidt* procedure.

## DECISION

The procedure outlined in *Schmidt v. Clothier,* 338 N.W.2d 256 (Minn.1983), did not create a binding agreement between

the parties; it is a course of action that applies in UIM situations arising under Minnesota's no-fault act. Because nonresident UIM coverage does not arise under Minnesota's no-fault act, *Schmidt* is not applicable to this case.

**Certified question answered in the negative.**

**ROBERT H. SCHUMACHER,** Judge (dissenting).

I respectfully dissent. I believe the exhaustion clause is not enforceable. First, Minn.Stat. § 65B.50 (2002), and opinions interpreting this statute are clear: Minnesota law will not impose greater underwriting risks on underinsured motorist (UIM) coverage than the insurer of a nonresident has contracted to take. *See, e.g., Aguilar v. Texas Farmers Ins. Co.,* 504 N.W.2d 791, 793 (Minn.App.1993) (stating section 65B.50 does not require that policy written in another state be "written up" to provide the minimum UIM coverage required by Minnesota law). But these cases are not applicable here. In this case, Ziegelmann paid premiums for the benefit of carrying the UIM coverage he now seeks to recover. The issue is not whether coverage should be added, but whether the exhaustion clause included in Ziegelmann's policy is enforceable.

Second, *Schwickert, Inc. v. Winnebago Seniors, Ltd.,* 680 N.W.2d 79 (Minn.2004), has no application here. The facts in that case involved damage to a building, not personal injury resulting from an automobile accident. *Id.* at 81. Moreover, in *Schwickert,* the supreme court was asked to determine whether the *procedure* set forth in *Schmidt v. Clothier,* 338 N.W.2d 256 (Minn.1983), could be used to resolve an insurer's subrogation rights in a first-party property insurance dispute. *See Schwickert,* 680 N.W.2d at 83. ("Owner asks us to extend [the *Schmidt*] procedure

for resolving an insurer's subrogation rights to first-property insurance disputes."). The supreme court determined the procedure did not apply. *Id.* at 84. But the supreme court did not determine the issue presented here—whether the exhaustion clause included in a nonresident's UIM policy is enforceable.

In Minnesota, exhaustion clauses are not enforceable. *Schmidt,* 338 N.W.2d at 261; *see also* Minn.Stat. § 65B.49, subd. 4a (2002) (specifying that insured may recover "difference between the limit of underinsured motorist coverage and the amount paid to the insured by [torfeasor].").
North Dakota law, however, requires the liability insurance of the tortfeasor be exhausted before UIM coverage may be sought. N.D. Cent. § 26.1–40–15.6 (2003). Thus, to determine whether the exhaustion clause is enforceable, we must determine which state's law applies. The district court was correct in applying a conflict-of-law analysis.

To determine the outcome of a conflict of law, we consider five choice-influencing factors: (1) predictability of result, (2) maintenance of interstate and international order, (3) simplification of the judicial task, (4) advancement of the forum's governmental interest, and (5) application of the better rule of law. *Jepson v. Gen. Cas. Co. of Wisc.,* 513 N.W.2d 467, 470 (Minn.1994). The first three factors are not significant in tort cases. *Bigelow v. Halloran,* 313 N.W.2d 10, 12 (Minn.1981); *see also Nodak Mut. Ins. Co. v. Am. Family Mut. Ins. Co.,* 604 N.W.2d 91, 96–97 (Minn.2000) (concluding that all factors except fourth factor were neutral in tort case arising from automobile accident).

The key consideration is the fourth factor, advancement of the forum's governmental interest. Minnesota places great value in compensating tort victims. *Jepson,* 513 N.W.2d at 472. In fact, we have

refused to apply our law when the law of another state would better serve to compensate a tort victim. *See, e.g., Bigelow,* 313 N.W.2d at 12–13; *Boatwright v. Budak,* 625 N.W.2d 483, 490 (Minn.App.2001), *review denied* (Minn. July 24, 2001). Moreover, because the automobile accident occurred in Minnesota, this state has the stronger governmental interest. *See Nodak,* 604 N.W.2d at 96 (holding that when all other relevant choice-of-law factors favor neither state's law, state where accident occurred has strongest governmental interest and that state's law should be applied).

The fifth factor, better rule of law, requires that Minnesota courts "prefer rules of law which make good socio-economic sense for the time when the court speaks, whether they be its own or another state's rules." *Bigelow,* 313 N.W.2d at 13 (quotation omitted). The supreme court has in some cases not placed significant emphasis on this factor. *See Nodak,* 604 N.W.2d at 96. Nevertheless, I note that Minnesota law makes good socio-economic sense in this case. By not enforcing exhaustion clauses, Minnesota law ensures that tort victims are compensated and limits the amount of useless litigation occurring in this state. Not only does Minnesota law make good socio-economic sense for tort victims and for the cost imposed on the judicial system, but the procedure outlined in *Schmidt* protects the economic interests of the insurer. *See Schmidt,* 338 N.W.2d at 260–63.

For these reasons, I would affirm the district court's denial of National Farmers' motion for summary judgment. Minnesota's law should be applied, under which the exhaustion clause is not enforceable.