*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1384**

Chrystal Gardner,
Appellant,

vs.

Accend Services,
Respondent.

**Filed July 18, 2016
Affirmed
Bratvold, Judge**

St. Louis County District Court
File No. 69DU-CV-15-138

Chrystal Gardner, Duluth, Minnesota (pro se appellant)

Craig S. Hunter, Northland Law, Duluth, Minnesota (for respondent)

Considered and decided by Schellhas, Presiding Judge; Reyes, Judge; and Bratvold, Judge.

## U N P U B L I S H E D   O P I N I O N

**BRATVOLD**, Judge

Appellant Chrystal Gardner challenges the district court's denial of her motion for a new trial. She asserts that the district court erred in determining that she was not entitled to unpaid wages; compensation for unused, accrued paid time off; or a statutory penalty under Minn. Stat. § 181.13 (2014). Because the record supports the verdict in favor of

Gardner's former employer, the district court did not abuse its discretion in denying her motion. We affirm.

## FACTS

This case arises from Chrystal Gardner's employment as a counselor for respondent Accend Services, where she worked until June 2014. Accend is headquartered in Duluth and provides behavioral-health psychotherapy and rehabilitative mental-health services.

Accend terminated Gardner's employment on June 27, 2014. According to Accend CEO and President Michael Clevette, he met with Gardner "in late June relating to performance problems, complaints from clients, as well as services that were exceeding the clinically approved times, [and] a number of other issues relating to performance." After their meeting, Clevette required Gardner to meet with her clinical supervisor on June 24. Gardner did not appear for the meeting and later "indicated to [Accend] that she . . . simply refused to attend the meeting." Upon learning of her refusal to appear, Clevette terminated Gardner for misconduct. The same day, Accend disabled Gardner's access to the electronic medical-records system through which counselors logged their time and services.

While preparing Gardner's final paycheck, Accend discovered that her electronic records reflected one week of fully documented, billable hours of mental-health services and one week of time, June 23 to June 27, for which the documentation of her services was incomplete.

In early July, Accend paid Gardner for one week of fully documented, billable hours. Because Gardner had not completed the documentation for her time between

2

June 23 and June 27, however, Accend did not pay her for that week. In an effort to complete the required documentation, several Accend employees attempted to contact Gardner by phone, email, and text message to arrange for her access to Accend's electronic medical-records system. At one point, Accend reenabled Gardner's access to the system. Gardner did not respond to any of Accend's communication attempts.

Gardner took the position that she was not required to complete the documentation of her services to be compensated for the hours between June 23 and June 27. In an email to an Accend administrative assistant on July 9, 2014, Gardner stated that "with the request to complete documentation, I will not be performing or rendering additional services to Accend Services Inc." Relying on Minn. Stat. § 181.13 (2014), she demanded a check for her hours from June 23 to June 27. Accend did not pay Gardner for this week.

Gardner brought an unpaid-wages claim in conciliation court. Gardner claimed that she was entitled to both the unpaid wages from June 23 to June 27 and the statutory penalty provided by Minn. Stat. § 181.13. After the conciliation court awarded her partial recovery, she removed the case to district court.

At the district court, Gardner additionally argued that she was entitled to compensation for unused, accrued paid time off. At the one-day court trial, where Gardner represented herself, Gardner and Clevette testified. Following trial, the district court ordered entry of judgment in favor of Accend, denying Gardner all recovery.[1] With the

---

[1] Gardner sought $905.74 in unpaid wages; $1,407.78 for accrued, unused paid time off; and $1,662.37 for the statutory penalty under Minn. Stat. § 181.13, for a total of $3,975.89.

assistance of counsel, Gardner moved for a new trial, which the district court denied. Gardner now appeals.

## D E C I S I O N

We review a district court's denial of a new-trial motion for abuse of discretion. *Moorhead Econ. Dev. Auth. v. Anda*, 789 N.W.2d 860, 892 (Minn. 2010). In doing so, this court reviews the district court's factual findings for clear error and its legal determinations de novo. *Rasmussen v. Two Harbors Fish Co.*, 832 N.W.2d 790, 797 (Minn. 2013).

A district court may grant a party's new-trial motion on any one of seven available grounds. Minn. R. Civ. P. 59.01. Gardner argued that she is entitled to a new trial because "[t]he verdict . . . is not justified by the evidence, or is contrary to law." Minn. R. Civ. P. 59.01(g). When a new-trial motion is made following a court trial, the judge is asked to determine whether the weight of the evidence supports the initial decision. *See Clifford v. Geritom Med, Inc.*, 681 N.W.2d 680, 686 (Minn. 2004) ("[A] motion for a new trial gives a district court the opportunity to correct errors without subjecting the parties to the expense and inconvenience associated with an appeal."). In fact, the trial judge following a court trial need not grant a new trial but may modify findings and enter a new judgment. Minn. R. Civ. P. 59.01; *see, e.g.*, *Johnson v. Johnson*, 223 Minn. 420, 424–25, 27 N.W.2d 289, 292 (1947) (noting that, after a court trial, a party may move the district court to modify its legal conclusions to correspond with its factual findings). Our scope of review is limited to determining whether the findings of fact support the conclusions made by the trial court. *Johnson*, 223 Minn. at 424–25, 27 N.W.2d at 292.

4

Gardner argues that the district court abused its discretion in denying her motion for a new trial and challenges the district court's conclusions that (1) she did not prove by a preponderance of the evidence that she was entitled to compensation for the hours between June 23 to June 27, 2014; (2) she was not entitled to compensation for her unused, accrued paid time off upon her discharge; and (3) Accend was not liable for the statutory penalty for unpaid wages. We address each argument in turn.

### *Unpaid Wages*

Discharged employees are entitled to prompt payment of any unpaid wages upon their separation from an employer. Minn. Stat. § 181.13(a) (2014). Whether the wages have been earned is governed by the employment contract between the parties. *Lee v. Fresenius Med. Care, Inc.*, 741 N.W.2d 117, 127–28 (Minn. 2007). Where, as here, neither party introduces evidence of a written agreement, "the burden of proof shall be upon the employer to establish the terms of the verbal agreement in case of a dispute with the employee as to its terms." Minn. Stat. § 181.56 (2014). The existence and terms of an oral contract are factual issues. *Rios v. Jennie-O Turkey Store, Inc.*, 793 N.W.2d 309, 315 (Minn. App. 2011).

Here, the district court found that "part of the basis on which Ms. Gardner was to be paid involved documenting services provided to clients." This finding is supported by the evidence. Regarding the parties' agreement, Clevette testified that Accend's pay policy has been the same since its establishment in 2006 and Accend pays its counselors an hourly rate for the billable mental-health services they provide clients. Counselors are required to enter billing information in Accend's electronic medical-records system and must complete

the documentation within 24 hours of providing the client service. Documentation must specify any travel time associated with the session, the amount of time spent with a client, and the services provided. Only after a counselor has fully documented and confirmed his or her time as an accurate delivery of a medical service will Accend pay the counselor for his or her hours. Clevette also testified that Accend may bill for the services only if the counselor completes documentation of services. He testified that Accend does not compensate counselors for additional time spent fully documenting their services.

In her own direct testimony, Gardner described Accend's pay policy consistently with Clevette's testimony. Additionally, as noted by the district court, the trial exhibits (i.e., letters and emails) established that Gardner understood Accend's requirement.

On this record, the district court correctly concluded that the parties' agreement required Gardner to complete the electronic documentation of her services before Accend was obligated to compensate her for the hours. Stated in other terms, complete documentation was a condition precedent to Accend's payment obligation to Gardner. *See Schwickert, Inc. v. Winnebago Seniors, Ltd.*, 680 N.W.2d 79, 84 (Minn. 2004) (citing Restatement (Second) of Contracts § 237 (1981) to reiterate that "remaining duties of one party to a contract are conditioned on there being no previous 'uncured material failure' by the other party"). Further, it is undisputed that, under the parties' agreement, Accend did not compensate counselors for additional time spent documenting their services.

Because the parties' agreement included a condition precedent, Minnesota law requires that Gardner must prove that she had completed performance before she was entitled to demand payment by Accend. *See Briggs Transp. Co v. Ranzenberger*, 299 Minn.

6

127, 129, 217 N.W.2d 198, 200 (1974) (stating that, to recover, plaintiff must establish "(a) the formation of the contract; (b) *performance by plaintiff of any conditions precedent to his right to demand performance by defendant*; and (c) a breach of the contract by defendant" (emphasis added)).

The record also supports the district court's determination that Gardner did not complete the documentation of her services for the period of June 23 to June 27, 2014. Accend promptly paid Gardner for her fully documented hours. But the district court found that Gardner refused to complete the remaining documentation when Accend asked her to do so, despite being given multiple opportunities to access the electronic medical-records system. Based on these findings, the district court concluded that Gardner was not due wages for June 23 to June 27.

Gardner challenges the district court's conclusion, arguing that completing the documentation of her services amounted to work, which Accend could not require her to perform once it terminated her employment. She maintains that she is entitled to compensation because she delivered approximately 20 hours of services from June 23 to June 27. Gardner's argument fails because her refusal to complete the documentation defeats her claim for breach and excuses Accend from compensating her for any time during this period. *See, e.g., Schwickert*, 680 N.W.2d at 86 (holding that insurer's erroneous denial of coverage relieved insured of contractual obligation to protect insurer's subrogation rights).

In sum, the district court did not abuse its discretion in denying Gardner's motion for a new trial. Gardner did not meet her burden of proving by a preponderance of the

evidence that she is entitled to payment for the week of June 23 to June 27, and the district court did not err in its factual determinations or legal conclusions.

### *Unused, Accrued Paid Time Off*

An employer's "liability as to vacation-pay rights is wholly contractual." *Tynan v. KSTP, Inc.*, 247 Minn. 168, 177, 77 N.W.2d 200, 206 (1956). The Minnesota Supreme Court has stated,

> when employers choose to offer paid time off as a benefit, employers and employees can contract for the circumstances under which employees are entitled to paid time off and payment in lieu of paid time off, so long as the contract provisions are not prohibited by or otherwise in conflict with a statute.

*Lee*, 741 N.W.2d at 123.

Here, Clevette's testimony established the relevant terms of Accend's paid-time-off policy. According to Clevette, Accend notified Gardner when she accepted her current position that "PTO would not be paid out to employees who left without adequate notice or who were terminated for misconduct." Clevette also testified that Gardner was terminated for misconduct. Clevette added that, as a result of Gardner's termination for misconduct, she was ineligible for compensation for any accrued paid time off.

The district court relied on Clevette's undisputed testimony in denying Gardner's claim. Gardner argued that Accend's policy was contrary to Minnesota law, relying on *Lee v. Fresenius Med. Care*, a Minnesota Supreme Court case that states "we now conclude that paid time off or vacation pay constitutes wages for purposes of section 181.13(a)." *Id.* at 124–25. The district court determined that this quote is taken out of context and does not

8

support Gardner's claim. In this appeal, Gardner again relies on *Lee* and also asserts that an unemployment-law judge's decision establishes that she was not terminated for misconduct.

Gardner's challenges fail for at least two reasons. First, Gardner relies on impermissible evidence to claim that she was not terminated for misconduct. At trial, Gardner twice attempted to introduce evidence of an unemployment-law judge's decision granting her unemployment benefits; opposing counsel objected, and the district court sustained the objections. Gardner offered no other evidence on the reason for her termination. On appeal, she again asserted the unemployment-law judge's decision in her brief and addendum. Accend successfully objected by motion, obtaining this court's order striking four documents from Gardner's addendum.

Minnesota law provides that, "regardless of whether the action involves the same or related parties or involves the same facts," an unemployment-law judge's decision is not admissible in any other forum nor binding as collateral estoppel. Minn. Stat. § 268.105, subd. 5a (2014). The district court therefore correctly excluded this evidence. Moreover, the unemployment-law judge's decision is not in the record and therefore will not be considered on appeal. *See Fabio v. Bellomo*, 489 N.W.2d 241, 246 (Minn. App. 1992), *aff'd*, 504 N.W.2d 758 (Minn. 1993).

Second, the district court properly interpreted and applied *Lee*, in which the employee handbook "specif[ied] that an employee who resigns without giving proper notice or who is terminated for misconduct will not be eligible for payment of earned but unused paid time off." *Id.* at 120. Fresenius terminated Lee for a "pattern of behavior" that

resulted in "performance and patient safety issues," which it concluded was misconduct; Fresenius then refused to pay Lee for her unused, accrued paid time off upon her discharge. *Id.* at 120–21.

The supreme court determined that, "[u]nder the terms of Lee's employment contract with Fresenius, Lee is not entitled to payment in lieu of her paid time off because the terminated-for-misconduct provision in the employment contract explicitly makes Lee ineligible for payment." *Id.* at 123. The supreme court then reinstated the district court's determination that Lee was not entitled to payment in lieu of unused paid time off. *Id.* at 130.

Like the employee handbook in *Lee*, Gardner's employment agreement with Accend contained a terminated-for-misconduct provision, which disqualified such employees from cashing out their unused, accrued paid time off upon discharge. Because Accend terminated Gardner for misconduct, she had no contractual claim to compensation for her unused, accrued paid time off.

### *Statutory Penalty*

Under Minnesota law, once an employer discharges an employee, "the wages or commissions actually earned and unpaid at the time of the discharge are immediately due and payable upon demand of the employee." Minn. Stat. § 181.13(a). If an employer does not pay the earned, unpaid wages within 24 hours, the employer is "in default" and is liable to the discharged employee for a statutory penalty in addition to the unpaid wages. *Id.* For the purposes of enforcing the statutory penalty, the employment contract governs whether

10

wages were "actually earned and unpaid." *Lee*, 741 N.W.2d at 136; *accord Chambers v. Travelers Companies*, *Inc.*, 668 F.3d 559, 566 (8th Cir. 2012).

Accend is not liable for the statutory penalty because it was never "in default." Under the terms of the employment contract, Gardner had not actually earned the unpaid wages she sought because she failed to complete the documentation requirement. Regarding the paid-time-off compensation, Clevette's undisputed testimony established that Gardner was ineligible for it under the terminated-for-misconduct provision of the parties' employment agreement. Accordingly, Accend did not fail to promptly deliver any unpaid wages at the time of Gardner's discharge, thus it cannot be liable for the corresponding statutory penalty, and the district court did not err in its determination.

The district court did not abuse its discretion in denying Gardner's motion for a new trial.

**Affirmed.**

11